NATHANIEL A. DENMAN AND LUCILLE G. DENMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88206. Filed March 31, 1961.

OPINION.

MURDOCK, *Judge:* An order was entered on February 24, 1961, dismissing this case for lack of jurisdiction. The petitioners, who throughout have proceeded pro se, filed a motion on March 17, 1961, to vacate that decision, and it seems appropriate to clarify the situation.

The Commissioner filed a motion on January 19, 1961, to dismiss this proceeding for lack of jurisdiction on the ground that a document "filed as the petition on April 11, 1960," was not filed within the time prescribed by law. Attached to his motion was a copy of a notice of deficiency for 1955 and proof of the mailing of the original on November 14, 1957. The Court entered an order on January 24, 1961, which was served upon the petitioners. It called the petitioners' attention to the facts stated in the respondent's motion to dismiss and to the petitioners' privilege to file on or before February 20, 1961, a written objection to the motion, setting forth facts supported by appropriate documentary evidence to indicate that the petition was timely filed. Nathaniel A. Denman, one of the petitioners, wrote a letter dated February 13, 1961, to the Clerk of the

Court which was received by the Court on February 15, 1961, to which was attached a photostatic copy of a document which enabled the Court to identify the original thereof and the envelope in which mailed, as a communication received by the Court from Nathaniel on February 20, 1958.

The petitioners now rely upon that document as the original petition in this case for jurisdictional purposes. The Tax Court did not file that document as a petition because it did not think that it was intended by the taxpayers to be filed as a petition. The Clerk of the Tax Court, upon receipt of that document, promptly mailed to the sender a copy of the Rules of Practice of the Court together with a form letter stating how he could file a proper petition with the Tax Court should he so desire.[1] His next communication to the Court was dated April 8, 1960.

The document now relied upon was entitled "PROTEST (in lieu of petition)" and bore little, if any, resemblance to a petition in accordance with the Rules of the Court. It bears no caption. It makes no reference to any notice of deficiency or to any particular tax year, or years. It is signed by Nathaniel only and is not verified. No notice of deficiency was attached to the document. It was not accompanied by any filing fee. It contains such statements as "We herewith file an official protest concerning the alleged 'deficiencies' claimed to have been found in our Tax, Income, by Mr. Martin Berg"; "We refuse to petition"; "We do not desire to beg for a petition, we kiss no man's foot"; and it concludes with "Now what do we do? What is the next step? We have been threatened, tricked, lied to, and had extortion practiced on us by your agents, and wonder what the next event will be." The Tax Court has no "agents." Martin Berg mentioned in the document is not known to the Tax Court.

Later communications from the petitioners indicate that this proceeding is intended to refer to 1955 income taxes of the petitioners.[2] A partial copy of a notice of deficiency for 1955 was attached to a "PETITION" filed with the Court on November 23, 1960. This notice was signed by Frank J. Cavanagh on behalf of Russell C. Harrington, the Commissioner of Internal Revenue. It contains no reference to anyone named Martin Berg.

The document received by the Court on February 20, 1958, and the envelope were examined by the Court in connection with its consideration of the January 19, 1961, motion of the Commissioner and the February 13, 1961, letter from one of the petitioners, following which an order of dismissal was entered February 24, 1961. It was errone-

---

[1] No petition conforming to the Rules of the Court has been filed in this case. A document was filed April 11, 1960, and given this docket number.

[2] This is a proper conclusion despite the fact that in a document filed as of April 11, 1960, the petitioner Nathaniel refers to 1956 and 1957 taxes.

ously stated in that order that the postmark date on the envelope in which the document received on February 20, 1958, was mailed to the Tax Court is not legible. The postmark on that envelope is legible and it is "Feb 17 1958 5 P.M. Wareham, Mass." The 90th day allowed by law for the filing of a petition following the mailing of the notice of deficiency in this case was February 12, 1958, which was not a Saturday, Sunday, or legal holiday in the District of Columbia. The Court concluded, before dismissing the case, that even if the document in question received by the Court on February 20, 1958, could, contrary to express statements made therein, be regarded as a petition, nevertheless there was no showing that it had been filed within the 90-day period.

The photostatic copy of the document attached to the petitioners' letter of February 13, 1961, has on it a photostatic copy of a "RECEIPT FOR CERTIFIED MAIL—15¢" No. 2324136. The document received by the Tax Court on February 20, 1958, was sent by certified mail and bears a sticker "Certified Mail No. 2324136."

Section 7502 of the Internal Revenue Code of 1954 titled "TIMELY MAILING TREATED AS TIMELY FILING" provides in paragraph (a) that if any document, required to be filed within a prescribed period by the internal revenue laws, is delivered to the addressee after the expiration of that period, the date of the United States postmark stamped on the cover in which the document is mailed shall be deemed to be the date of delivery, if the postmark date falls within the prescribed period and if the document was within the prescribed time deposited in the mail in the United States in an envelope, postage prepaid, properly addressed to the agency with which the document is required to be filed. Paragraph (c) (2), as amended with respect to certified mail, provides that "The Secretary or his delegate is authorized to provide by regulations [3] the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail." Paragraph (1) relates to registered mail and provides that the date of registration shall be deemed the postmark date. Reference, then, has to be made to Treasury regulations section 301.7502–1(c)(2) as amended (1960–1 C.B. 674), which provides "If the document is sent by United States certified mail and the sender's receipt is postmarked by the postal employee to whom such document is presented, the date of the United States postmark on such receipt shall be treated as the postmark date of the document." The "sender's receipt" to which the above refers is a receipt, POD Form 3800, to be filled in by the sender, which the postal employee, upon request, postmarks and returns to the sender at the time of mailing. A postal employee may

---

[3] A litigant before the Tax Court is thus authorized to prescribe a rule for filing petitions by his adversary in the Tax Court.

not stamp a sender's receipt with a postmark except upon presentation of the certified article to him for immediate mailing.

A person desiring to send a letter by certified mail must purchase a certified mail stamp and with it is furnished a blank form of sender's receipt for certified mail, POD Form 3800, on which is printed the certification number and which has attached to it a sticker which can be easily detached and which bears the same number. The sender, not the postal employee, fills in the sender's receipt. If the sender does not desire to have his sender's receipt postmarked, he can attach the certified mail sticker to the address side of the piece of mail properly addressed and stamped, retain his sender's receipt with whatever entries he chooses to make on it, and at his convenience place the article in a United States mail receptacle. If the sender desires to have his sender's receipt postmarked, he must apply the sticker to the address side of his envelope and present the envelope, properly addressed and stamped, together with the filled-in sender's receipt, to the postal employee who stamps the sender's receipt with the postmark date, returns it to the sender and retains the piece of mail for transmission to the addressee. See section 168.43 (d) and (e) of the Postal Manual. The instructions to the postal employee in accepting certified mail for mailing when a postmarked sender's receipt is requested are, *inter alia*, to compare the name and address of the addressee on the article and on the sender's receipt, to make certain that proper stamps have been affixed, to postmark the receipt portion of Form 3800 and return it to the sender and deposit the article in the mail, but "Do not return it to the mailer." Section 362.121 of the Postal Manual.

The envelope in which the document received by the Tax Court on February 20, 1958, was mailed, bears the following stamps: A 3-cent stamp embossed on the envelope; a 15-cent stamp titled "CERTIFIED MAIL" and a 7-cent postage stamp. The photostatic copy of the sender's "RECEIPT FOR CERTIFIED MAIL—15¢," Form 3800, attached to the petitioners' letter received by the Court on February 15, 1961, does not bear any postmark by any postal employee to whom such document was presented but, instead, in the area headed "Postmark or Date," where the postmark would be stamped if that receipt were to indicate that the piece of mail had been presented to the postal employee for actual mailing, there is no postmark whatsoever but the sender has apparently inserted in typewriting "12 Feb 58." The receipt would thus indicate that the piece of mail in question was not presented to any postal employee for mailing on February 12, 1958. The postmark date stamped on the envelope in which the document in question was mailed to the Tax Court is "Wareham, Mass. 5 P.M. Feb 17 1958." The evidence before the Court indicates that the envelope was not presented to any postal employee for mailing on February 12,

1958, but was placed in the mail by the sender several days after February 12, 1958, was postmarked at 5 p.m. on February 17 in Wareham and was received in due course by the Tax Court at 11:54 a.m. on February 20. There is no evidence of any delay in the mails whatsoever with respect to the transmission of this document.

Nathaniel did not take advantage of section 7502(c)(2) of the Internal Revenue Code of 1954 and the regulation issued pursuant thereto, section 301.7502–1(c)(2), set out above, by having the return receipt postmarked. Instead, as his sworn statement recites, he himself "personally mailed" the piece of mail "by placing it in a mail box in front of the Post Office building after the windows for mailing closed." It makes no difference when he placed it there since he did not have his sender's receipt postmarked. The test, then, is whether this document was actually filed with the Tax Court within the 90-day period or whether the postmark date on the envelope in which it was sent to the Tax Court bears a postmark date within that period. The record shows both dates and neither one is within the 90-day period. It thus appears that even if the document received by the Tax Court from Nathaniel on February 20, 1958, was intended as a petition to the Tax Court, nevertheless it was not timely filed and it follows that the order entered by the Court on February 24, 1961, dismissing the proceeding for lack of jurisdiction was proper. The petitioners' motion filed March 17, 1961, to vacate that order has been denied.