## WELLS MARINE, INC. (DOING BUSINESS AS Z–D PRODUCTS), PETITIONER *v.* RENEGOTIATION BOARD, RESPONDENT

Docket No. 1069–R.  Filed June 3, 1970.

*Bruce I. Hochman* and *Harvey D. Tack*, for the petitioner.

*William D. Ruckelshaus, Harland F. Leathers*, and *Robert N. Ford*, for the respondent.

## OPINION

Section 1218 of the Renegotiation Act of 1951, providing for review by the Tax Court of an order of the Renegotiation Board determining an amount of excessive profits, provides that petitioner may "within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing [of the notice of such order]" file a petition with the Tax Court for a redetermination of the order of the Board. In this case petitioner had until September 10, 1969, a Wednesday, to file its petition within the 90-day period.

Petitioner argues that the date of the U.S. postmark stamped on the envelope, i.e., September 7, is to be considered the date on which the petition was filed. He relies on section 7502, I.R.C. 1954.[2]

There is no question that, had we before us a petition for a redetermination of a tax deficiency, the petition would be deemed under section 7502 to have been filed on or before September 7—within the 90-day period. Respondent's limited contention is that section 7502 does not apply to a renegotiation petition and that, in effect, a different rule from that which applies to tax cases, which constitute the overwhelming majority of cases filed in this Court, applies to renegotiation cases, which constitute only a small percentage of the cases filed in this Court. It relies on the language of section 7502(a)(1) which limits application of the section to documents, etc., required to be filed within a prescribed period of time under authority of "any provision of the internal revenue laws," contending that section 1218 of the Renegotiation Act of 1951, is not a provision of the internal revenue laws within the meaning of the section.

Prior to the enactment of section 7502 in 1954 it was a well-established rule that a petition is "filed" in the Tax Court, and in other

---

[2] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.

　　(a) GENERAL RULE.—

　　　　(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

　　　　(2) MAILING REQUIREMENTS.—This subsection shall apply only if—

　　　　　　(A) the postmark date falls within the prescribed period or on or before the prescribed date—

　　　　　　　　(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

　　　　　　　　(ii) for making the payment (including any extension granted for making such payment), and

　　　　　　(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

　　*　　　*　　　*　　　*　　　*　　　*　　　*

　　(d) EXCEPTIONS.—This section shall not apply with respect to—

　　　　(1) the filing of a document in, or the making of a payment to, any court other than the Tax Court,

　　　　(2) currency or other medium of payment unless actually received and accounted for, or

　　　　(3) returns, claims, statements, or other documents, or payments, which are required under any provision of the internal revenue laws or the regulations thereunder to be delivered by any method other than by mailing.

courts as well, see *Charlson Realty Co.* v. *United States*, 384 F. 2d 434 (Ct. Cl. 1967), and the cases cited therein, within the meaning of the limitation statutes when it is actually delivered to the Court. Numerous cases arose, particularly with respect to petitions filed with the Tax Court, in which a petition which was mailed in ample time was actually delivered to the Court after expiration of the prescribed period.

In order to mitigate what they recognized as harsh inequities resulting from a literal adherence to the filing requirement, the courts have resorted to a legal fiction—the presumption of delivery in due course of the mails. If a petition, properly addressed and stamped, was mailed within time to be timely delivered to the Court in the due course of the mails, it was presumed to have been so delivered. This presumption could be rebutted by affirmative evidence of nondelivery. *Arkansas Motor Coaches* v. *Commissioner*, 198 F. 2d 189 (C.A. 8, 1952), reversing 28 T.C. 282; *Central Paper Co.* v. *Commissioner*, 199 F. 2d 902 (C.A. 6, 1952) ; and *Detroit Automotive P. Corp.* v. *Commissioner*, 203 F. 2d 785 (C.A. 6, 1953). In applying this presumption the courts are often compelled to engage in embarrassing inquiries into the handling of the mails by the Post Office Department and particularly into the performance of their duties by the courts' own staff members. See *Charlson Realty Co.* v. *United States, supra.* The wholly fictional aspect of any presumption concerning "due course of the mails," when it seems doubtful that mail actually travels in that course with any certainty or regularity, reveals one thing about resort to this presumption—that where circumstances permit,[3] courts have generally, and wisely, managed to avoid denying a petitioner his day in court.

The hardship of our denying jurisdiction in this case is extreme; under 50 U.S.C.A. sec. 1218, this Court has exclusive jurisdiction to determine the amount, if any, of excessive profits. See *United States* v. *California Eastern Line*, 348 U.S. 351 (1955). The contractor cannot pay the amount of excessive profits determined by the Board and then file a suit for refund in another court, as can a taxpayer in a tax deficiency case.

Fortunately, in this case we need not rely on the presumption of delivery in due course of the mails [4] because in 1954 Congress, in its wisdom, enacted section 7502 of the Internal Revenue Code to mitigate the harsh inequities of a literal adherence to the filing requirements with respect to petitions filed in the Tax Court. Under that section a petition to this Court is "deemed" filed as of the date of the U.S. post-

---

[3] Compare *Bloch* v. *Commissioner*, 254 F. 2d 277, affirming a Memorandum Opinion of this Court, and *Irving Fishman*, 51 T.C. 869, affd. 420 F. 2d 491, where circumstances did not permit, with *P. P. Leventis, Jr.*, 49 T.C. 353, where circumstances did permit.

[4] The facts in this case, particularly the date on the "delivery bill" of the Post Office, would probably rebut the presumption of delivery in due course of the mails.

mark stamped on the envelope in which it is mailed. The effect of section 7502 is to place in the control of the petitioner who chooses to transmit his petition to this Court through the U.S. mails the time when his petition will be deemed to be filed. He no longer has to depend upon the fortuitous voyage of his petition between and through various handling points in the postal system. In effect, section 7502 also allows a petitioner in the Tax Court the full benefit of the 90-day period within which to prepare his petition and thus achieves some degree of geographical uniformity, allowing a petitioner who is distant from the Tax Court the same period of time in which to mail his petition as one who, because he is nearer the office of the clerk of the Tax Court, may deliver his petition personally.

In the light of these considerations, we will not construe section 7502 narrowly as to defeat what we presume to have been the intent of Congress, i.e., that section 7502 applied to all petitions filed with this Court, unless that result is unavoidable under the terms of the statute. See concurring opinion of Judge Nichols in *Charlson Realty Co.* v. *United States, supra.* We do not think it is.

The United States Tax Court was created and derives its jurisdiction under title 26, chapter 76, subchapter C, of the Internal Revenue laws. Under the exception of subsection (d) (1) of section 7502, that section does not apply to the filing of a document in any other court than the Tax Court. Presumably, the section was made applicable to documents filed in the Tax Court alone because, unlike the U.S. District Courts, the Tax Court is a court of national jurisdiction, having its clerk's office in Washington, D.C., where all documents addressed to the Court must be filed. Unless the petitioner is in Washington or has counsel in Washington he must in most instances file his petition with the Tax Court by mail. This applies to petitions in renegotiation cases as well as petitions in tax cases, and the uncertainty of delivery in due course of the mails applies to petitions filed by contractors from California as well as to petitions filed by taxpayers from California. We think it is a permissible interpretation of section 7502 that there is included within the meaning of the phrase "any * * * document required to be filed * * * within a prescribed period * * * under any authority or provision of the internal revenue laws," as used in section 7502, *any* such document which is required to be filed in the Tax Court. The language of section 7502 is broad enough to justify its application to the petition before us. We cannot say that because the section was originally passed to mitigate the hardships dealt to taxpayers that it should be held inapplicable to mitigate the same hardships in respect of other petitioners to this Court. See *United States* v. *California Eastern Line, supra* at 353–354; *Charlson Realty Co.* v. *United States, supra.*

Some support for this construction of section 7502 is found in the Rules of Practice of the Tax Court, promulgated under the specific authority granted by section 7453 of the Internal Revenue Code. Rule 64, relating to renegotiation cases, provides that a case for the redetermination of excessive profits under the Renegotiation Acts shall be initiated by the filing of a petition as provided in the pertinent parts of Rule 7. Rule 7(a), which relates to the filing of petitions, makes reference to section 7502 in regard to the absolute statutory time limit on filing. A petitioner would also be led to believe that section 7502 applies to petitions filed in renegotiation cases by section 301.7502–1 (b)(ii), Proced. & Admin. Regs., which provides that the term "document" as used in section 7502—

does not include any document filed in any court other than the Tax Court, but the term does include *any* document filed with the Tax Court, including a petition for redetermination of a deficiency and a petition for review of a decision of the Tax Court. [Emphasis ours.]

We conclude that section 7502 applies to petitions filed with the Tax Court in renegotiation cases, that the petition in this case was timely filed, and that we have jurisdiction to decide this case.

*An appropriate order will be entered.*