FRED SYLVAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3542-74.    Filed December 16, 1975.

*Ray K. Babb, Jr.,* for the petitioner.
*Thomas J. Miller,* for the respondent.

OPINION

WILBUR, *Judge:* This matter is before us upon respondent's motion to dismiss for lack of jurisdiction. Respondent determined a deficiency in income tax due from the petitioner for the taxable year 1971 in the amount of $22,755.10 and, under section 6653(a),[1] an addition to the tax in the amount of $1,137.75. Respondent mailed a statutory notice of deficiency to petitioner by certified mail on February 20, 1974.

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

The period provided by section 6213(a)[2] for filing a petition with this Court expired on Tuesday, May 21, 1974, which was not a legal holiday in the District of Columbia.

The petition was mailed in Oklahoma City on May 20, 1974, by petitioner's attorney in an envelope properly addressed with the proper postage affixed. Petitioner's attorney received a certificate of mailing bearing an Oklahoma City, May 20, 1974, postmark affixed by postal meter, and another postmark affixed by the postal service also dated May 20, 1974. The certificate of mailing states that the postal service received one piece of ordinary mail from petitioner's attorney addressed to the United States Tax Court, Washington, D.C.

The envelope containing the petition was received in the Tax Court mailroom May 22, 1974. The stamps were not canceled and the envelope was not postmarked. The envelope was then opened and the petition was stamped as follows:

Tax Court
Mail Room
1974 May 22 AM 8:55

In accordance with procedures that have been employed by this Court prior and subsequent to 1974, only documents delivered through the mail are received in the Court's mailroom and stamped with this imprint.

Shortly thereafter, employees in the mailroom delivered the petition to the petition section and the following notation was imprinted by stamp on the petition:

Filed
1974 May 22 9:47
United States Tax Court

Respondent moved to dismiss the petition for lack of jurisdiction on the ground that the petition was not received or postmarked on or before the 90th day and therefore was not timely filed.

A petition for redetermination of a deficiency must be filed with this Court within 90 days after the notice of deficiency is mailed to the taxpayer. Sec. 6213. Failure to file within the

---

[2] SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * *

prescribed period requires that the petition be dismissed for lack of jurisdiction. *Angelo Vitale,* 59 T.C. 246 (1972); *Estate of Frank Everest Moffat,* 46 T.C. 499 (1966).

Filing is completed when the petition is received by the Court, unless the exception provided by section 7502 applies.[3] Section 7502 provides that a petition received after the 90th day but mailed on or before the 90th day is deemed filed on the date of the postmark, if the postmark is timely.[4]

Respondent contends that since the envelope in which the petition was mailed bears no postmark, the timely mailing provisions of section 7502 are inapplicable, citing *Jacob L. Rappaport,* 55 T.C. 709 (1971), affd. per curiam in open court without opinion 456 F. 2d 1335 (2d Cir. 1972). In *Rappaport,* we found that the petition there considered was timely mailed, but nevertheless concluded that evidence of when a postmark would have been made was irrelevant, since the requirement of a postmark (whether legible or not) "is essential to obtaining the benefits of section 7502(a)."

We have no doubt whatsoever that the petition herein was timely mailed and would have been timely postmarked but for an error on the part of the post office. We know for a fact the

---

[3] This may be a case where, at least in practice, the "exception" is the general rule, since petitions are filed in Washington, D.C., and in the vast majority of cases delivery via the mails is the only practical means available. This may have been one reason why Congress applied sec. 7502 to the Tax Court. See *Wells Marine, Inc. v. Renegotiation Board,* 54 T.C. 1189, 1193 (1970).

[4] SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.
(a) GENERAL RULE.—
(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.
(2) MAILING REQUIREMENTS.—This subsection shall apply only if—
(A) the postmark date falls within the prescribed period or on or before the prescribed date—
(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or
(ii) for making the payment (including any extension granted for making such payment), and
(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

petition was mailed, because it arrived in our mail room via the mails. Since it was received early in the morning on the 91st day, we also know that the petition was mailed in time to have received a timely postmark in the normal course of business. It is impossible for an item to arrive via mail early in the morning on the same day it is mailed, as we noted under very similar circumstances in *Alexander Molosh,* 45 T.C. 320 (1965), sustaining this Court's jurisdiction in the case of an illegible postmark. The only real distinction between *Molosh* and the instant case is that in *Molosh* the postmark was partially omitted, while in the instant case the postmark was entirely omitted.

In both cases we know that the item was mailed; in neither case is there a postmark indicating *when* it was mailed;[5] and in both cases the time a postmark would have been made must be determined from evidence other than a postmark. Nevertheless, as *Rappaport* states: "If the requirement of a postmark is the sine qua non of timely filing, such evidence [as to when the envelope would have been postmarked] would be irrelevant." (55 T.C. at 710). We believe this is an appropriate occasion to reexamine this basic premise of *Rappaport.*

Prior to the enactment of section 7502, timely filing depended on the vicissitudes of the mail, with the time of delivery varying as to the geographical area of mailing, the seasonal demands imposed on the post office, and the postal performance in the individual case presented. In order to alleviate hardships resulting from delays in particular cases, a presumption of timely delivery was often employed.[6]

Congress enacted section 7502 to eliminate the inequities resulting from variations in postal performance when a document is timely mailed. Since the time of mailing was being substituted for the time of delivery, Congress logically made the date of the postmark determinative of the time of mailing. This precludes a taxpayer from introducing evidence of timely mailing conflicting with an untimely postmark, save in the sole case of registered mail where the date of registration is "deemed the postmark date."[7] Sec. 7502(c)(1)(B). See *Boccuto v. Commissioner,* 277 F.

---

[5] The critical piece of information Congress intended the postmark to provide. See n. 8 *infra.*

[6] See discussion in *Wells Marine, Inc. v. Renegotiation Board, supra* at 1192 n. 3. See also *Rich v. Commissioner,* 250 F. 2d 170 (5th Cir. 1957).

[7] The statute authorizes the Secretary to provide by regulations the extent to which the

2d 549 (3d Cir. 1960); *Nathaniel A. Denman,* 35 T.C. 1140 (1961).

Congress, in making the postmark irrebuttable evidence of timely mailing, focused on the normal situation involving a readable postmark, *indicating the date when the document was mailed.*[8] There is nothing at all in the statute or legislative history indicating what Congress intended where the postmark is illegible; where there is no postmark because the petition was inserted in a new postal cover when the original cover was damaged; or where no postmark is affixed due to oversight or malfunction of a machine. Congress apparently did not consider these cases, and our task in these circumstances is to ask what Congress "would have intended on a point not presented to its mind, if the point had been present."[9]

---

rules applicable to registered mail also apply to certified mail. See sec. 301.7502-1(c)(2), exercising this authority. However, the certificate of mailing employed by petitioner in this case is not the same as certified mail. Certified mail provides a numbered receipt to the sender. The receipt bears the same number as the certified mail sticker attached to the article. Similarly, a numbered receipt is issued for registered mail. Certificates of mailing, on the other hand, are generally not numbered. Thus, a certificate of mailing while providing evidence of mailing, does not indicate that a particular item was mailed but only that an item was mailed to an addressee. See discussion of certified mail in *Nathaniel A. Denman,* 35 T.C. 1140, 1143 (1961). The regulations imply that these provisions were designed, at least in part, to overcome "the risk that the document will not be postmarked *on the day* that it is *deposited* in the mail" (sec. 301.7502-1(c)(2), *Proced. & Admin. Regs.,* emphasis supplied), but not that no postmark at all would be affixed, or that the postmark would be partially omitted or unreadable. See *Skolski v. Commissioner,* 351 F.2d 485 (3d Cir. 1965).

[8] The legislative history is sparse, but this point is made clear: "This new section applies in the case where documents (other than returns) are mailed to the proper office within the time prescribed by the internal-revenue laws, *as indicated by the postmark on the envelope,* and are received by that office after such time has expired. In such case, the document is deemed timely filed." See H. Rept. No. 1337, 83d Cong., 2d Sess. A434 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess. 615 (1954). (Emphasis added.)

[9] "The fact is that the difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when *the question which is raised on the statute never occurred to it;* when what the judges have to do is, not to determine what the Legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present. If there are any lawyers among those who honor me with their attention, let them consider any dozen cases of the interpretation of statutes, as they have occurred consecutively in their reading or practice, and they will, I venture to say, find that in almost all of them it is probable, and that in most of them it is perfectly evident, that the makers of the statutes had no real intention, one way or another, *on the point in question;* that if they had, they would have made their meaning clear; and that when the judges are professing to declare what the Legislature meant, they are in truth, themselves legislating to fill up *casus omissi.* " Gray, The Nature and Sources of the Law 173 (Macmillan 1921). (Emphasis added.) See Cardozo, The Nature of the Judicial Process 14, 15 (Yale University Press 1921). See also *Seaford Court Estates Ltd. v. Asher,* [1949] 2 K.B. 481, 499, discussed in *Henry McK. Haserot,* 46 T.C. 864, 874 (1966) (Tannenwald, *J.,* speaking separately).

In answering this question, we have held that evidence is admissible to ascertain the date of mailing when the postmark is illegible *(Alexander Molosh,* 45 T.C. 320 (1965); see also *Skolski v. Commissioner,* 351 F.2d 485 (3d Cir. 1965)), and when the original cover is destroyed and the petition is rewrapped in an envelope with no postmark *(Perry Segura & Associates, Inc.,* T.C. Memo. 1975-80). In both of these instances the time of mailing was not "indicated by the postmark" as contemplated by Congress.[10] For the *purpose Congress had in mind in referring to a postmark,* a postmark was simply not available.

For purposes of interpreting the specific statute before us, these cases cannot fairly be distinguished from cases where the postal service inadvertently neglects to postmark a properly mailed item. It certainly makes no sense to continue to distinguish between part of a postmark consisting of an empty or obliterated circle (or part of a circle), and no postmark at all. In all of these cases, there simply is not a postmark that serves the purpose of the statute as contemplated by Congress.

In the case of illegible postmarks and damaged envelopes, we have properly concluded evidence as to timely mailing is admissible. We think the answer is the same where a postmark is entirely (rather than partially) omitted through oversight. To hold otherwise would make the important right to a prepayment hearing depend entirely on the form by which a postal omission is manifested.[11] And to hold that we hear a case when a wholly omitted postmark is attributable to mishandling—an error of *commission*—but dismiss the same case when the error is one of *omission* occurring at the *time* the postmark should have been

---

[10] H. Rept. No. 1337, *supra.* If there had been a postmark indicating the *date* of mailing the postmark *itself* would be conclusive and not subject to *contradiction* by evidence aliunde. Evidence aliunde is admissible only when there is nothing to contradict—no postmark within the statute.

[11] This is an important right provided by Congress over one-half a century ago, and continually reaffirmed by Congress, most recently by providing in 1969 informal procedures for handling small claims. Those taxpayers are often unrepresented by counsel, will be unfamiliar with the jurisdictional significance of alternative procedures made available under sec. 7502, and will generally timely-deposit their informal petitions in the mail the way they do their income tax returns.

We have often said that we "should not adopt an interpretation which curtails [the right to a prepayment hearing] in the absence of a *clear* congressional intent to do so." *Samuel J. King,* 51 T.C. 851, 855 (1969). (Emphasis added.) See also *Irving Fishman,* 51 T.C. 869, 874 (1969), affd. per curiam 420 F. 2d 491 (2d Cir. 1970); *P. P. Leventis, Jr.,* 49 T.C. 353, 355 (1968). Certainly there is no "clear congressional intent" underlying this remedial statute that the inadvertent omission of a postmark due to circumstances wholly beyond the taxpayer's control, will necessarily deprive the taxpayer of his day in this Court.

affixed, is to make important rights depend on both the form *and* the time of the error. See *Perry Segura & Associates, Inc., supra* (involving a petition rewrapped by the postal office and also discussing the handling of instances involving dislodged stamps to which a postmark may have been affixed). As the Third Circuit said in permitting evidence as to timely mailing in the case of an illegible postmark: "To hold otherwise would be to narrow the scope of section 7502(a) to a fortuitous application wholly dependent upon the care with which postal employees affixed postmarks and thus unwarrantedly to defeat in part its remedial purposes." *(Skolski v. Commissioner,* 351 F. 2d at 488.)

In enacting section 7502, Congress intended to eliminate the random distribution of hardships occasioned by variations in postal performance. Distinctions based on the formal manifestation of postal omissions reintroduced the random distribution of hardships occasioned by variations in postal performance, and are inconsistent with the congressional purpose underlying the statute.

Additionally, the same evidence will be relevant in cases involving postmarks entirely omitted as is relevant in cases where the postmark is partially omitted, where damaged mail is rewrapped, or where stamps are dislodged. As stated in *Skolski:*

Evidence as to the actual time of mailing, such as the taxpayers here offered, was clearly relevant to this inquiry and should have been considered by the Tax Court. For it may certainly be reasonably inferred from the practice required of postal employees by the Postal Manual that mail is postmarked on the day it is received by the postal authorities and that the postmark bears that date. [351 F.2d at 488; fn. ref. omitted.] [12]

In the instant case we need not hear additional evidence. The petition was received via the mails before 9 a.m. on the 91st day. It is clear that to arrive early on the 91st day, it must have been

---

12 The Postal Service Manual, part 332 (Endorsing, Canceling, and Postmarking) currently states the following:

.33 SETTING DATE AND TIME INDICATOR

Use a.m. to designate hours of postmark from 12 a.m. until 12 noon and p.m. to designate hours of postmark from 12:01 p.m. to 12 midnight.

.34 POSTMARKING LATE MAIL

Mail deposited after the last dispatch but before the office closes must be postmarked the same day. For postmarking, office closing time means the time the last employee assigned to mail processing is scheduled to leave the office. Lobby notices showing mail closing and dispatch time must state that mail deposited in the lobby or in the collection box in front of the post office after the office closes will not be postmarked until the following morning. Include in the statement weekend and holiday exceptions.

The language of the Postal Manual relied on by *Skolski* was essentially the same. See 351 F. 2d 485, 488 n. 4 (1965).

mailed, at the latest, early enough on the 90th day so that a timely postmark would normally have been affixed. We therefore conclude that the omitted postmark, if affixed, would have been timely. (See *Alexander Molosh,* 45 T.C. 320 (1965), holding in the case of a partially omitted postmark that a petition received on the 91st day must have been postmarked prior to the day received.)

In overruling *Rappaport,* we do not do so lightly. However, we noted in *Rappaport* that:

there may be some logical inconsistency between the rule applicable where there is no postmark at all and the rationale of the cases which permit a taxpayer, in the situation where there is an illegible postmark, to sustain his burden by submitting evidence of time of mailing to prove when the postmark was made. * * * [*Jacob L. Rappaport,* 55 T.C. at 711.]

Subsequent rulings undermine the *Rappaport* holding that a postmark is the sine qua non to invoking section 7502, while magnifying the logical inconsistency created by this narrow reading of the remedial provisions of section 7502.[13] *Rappaport* must yield to the logic and experience of analogous cases (prior and subsequent) that provide an interpretation more in accord with the remedial purposes of section 7502 and the importance of a prepayment adjudication of an individual citizen's tax controversy. As Justice Frankfurter stated:

We recognize that stare decisis embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine

---

[13] See *Perry Segura & Associates, Inc.,* T.C. Memo. 1975-80, declining to follow *Rappaport* where the mailing cover was destroyed and a new cover provided by the post office in which the petition arrived late with no postmark. These rulings are not only in accord with the purpose underlying sec. 7502 and the cases involving illegible postmarks, but with the cases prior to *Rappaport* involving no postmark. Both *Alexander Molosh,* 45 T.C. 320 (1965), and *C. Louis Wood,* 41 T.C. 593 (1964), affd. 338 F.2d 602 (9th Cir. 1964), contemplated that under appropriate circumstances evidence that the envelope would have been timely postmarked would be admissible. And in *Bloch v. Commissioner,* 254 F.2d 277 (9th Cir. 1958), the court assumed and stated that this was the procedure to be followed:

"In Case No. 15,728 there is no postmark, so *other evidence* was resorted to in order to determine the date of mailing. The date of the covering letter and the *statement* of the case worker * * * *were the evidence* * * * that said petition was not filed in time. [Id. at 279; emphasis added.]"

*Rich v. Commissioner,* 250 F.2d 170 (5th Cir. 1957), involved a *clearly legible, untimely postmark* on the envelope that may not, of course, be contradicted save in the case of registered or certified mail.

more embracing in its scope, intrinsically sounder, and verified by experience. [*Helvering v. Hallock,* 309 U.S. 106, 119 (1940).]

*An appropriate order will be entered.*

Reviewed by the Court.

TANNENWALD, *J.,* concurring: As the author of this Court's opinion in *Rappaport,* I feel compelled to append a brief comment. I am now convinced that our decision in *Rappaport* was wrong and, as the Supreme Court admonished in *Helvering v. Hallock,* 309 U.S. 106 (1940), I believe we can and should reject the "doctrine of disability at self-correction."

GOFFE, *J.,* agrees with this concurring opinion.

DRENNEN, *J.,* dissenting: I respectfully dissent. The issue in this case involves the jurisdiction of this Court and therefore has added importance. This issue has been before various courts on numerous occasions since Congress first enacted section 7502 in the 1954 Code, and the courts have consistently held that the sine qua non of section 7502(a) is a timely postmark date. In my view the majority opinion overrules or undermines that entire line of cases and attempts to rewrite section 7502(a). The result is a victory for the petitioner in this one case, and the disavowal of the criteria for determining timely filing heretofore established by the law, the regulations, and a long line of court decisions, with the substitution of nothing definitive in its place.

A petition to the Tax Court for redetermination of a deficiency must be filed with this Court within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency is mailed to the taxpayer. Sec. 6213. Timely filing of the petition is jurisdictional, not procedural, *Gradsky v. Commissioner,* 218 F. 2d 703 (6th Cir. 1954), and failure to file within the prescribed period requires that the petition be dismissed for lack of jurisdiction. *Angelo Vitale,* 59 T.C. 246 (1972); *Estate of Frank Everest Moffat,* 46 T.C. 499 (1966); *Bloch v. Commissioner,* 254 F. 2d 277 (9th Cir. 1958); *Rich v. Commissioner,* 250 F. 2d 170 (5th Cir. 1957). Ordinarily "A paper is filed when it is delivered to the proper official and by him received to be kept on file." *Poyner v. Commissioner,* 81 F. 2d 521 (5th Cir. 1936). Thus, prior to enactment of section 7502

in the Internal Revenue Code of 1954, a petitioner who wished to file his petition by mail had to send it sufficiently in advance of the expiration of the filing period to reach the Court before the due date. Thus the time available to petitioners to prepare their petitions varied depending on the time required for mail from their residences to reach Washington, D. C.; moreover, the petitioner also ran the risk of delays in the mail. To cope with this inequity some courts, relying on the presumption of timely receipt after timely mailing, found that timely mailing would suffice. *Arkansas Motor Coaches v. Commissioner,* 198 F. 2d 189 (8th Cir. 1952); *Central Paper Co. v. Commissioner,* 199 F. 2d 902 (6th Cir. 1952); *Detroit Automotive Products Corp. v. Commissioner,* 203 F. 2d 785 (6th Cir. 1953).[1] Recognizing the inequities and the uncertainty of the measures being taken by the courts to adjust them, Congress enacted section 7502 to alleviate the hardships resulting from the failure of the mail to function properly and the inequities resulting from the differences in geographical location of petitioners. See *Bloch v. Commissioner, supra; Wells Marine, Inc. v. Renegotiation Board,* 54 T.C. 1189, 1191-1192 (1970).

Section 7502 [2] provides exceptions to the general rule that a

---

[1] In *Bloch v. Commissioner,* 254 F. 2d 277, 279 (9th Cir. 1958), the court indicated that since the enactment of sec. 7502, "There are no presumptions which we can indulge in appellant's [petitioner's] behalf."

[2] SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.
(a) GENERAL RULE.—
(1) DATE OF DELIVERY.—If any return * * * or other document required to be filed * * * within a prescribed period * * * under authority of any provision of the internal revenue laws is, after such period * * *, delivered by United States mail to the agency * * * with which such * * * document is required to be filed, * * * the date of the United States postmark stamped on the cover in which such * * * other document * * * is mailed shall be deemed to be the date of delivery * * *
(2) MAILING REQUIREMENTS.—This subsection shall apply only if—
(A) the postmark date falls within the prescribed period * * *
(i) for the filing * * * of the * * * other document * * * and
* * *
(B) the * * * other document * * * was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency * * * with which the * * * other document is required to be filed * * *
(b) POSTMARKS.—This section shall apply in the case of postmarks not made by the United States Post Office only if and to the extent provided by regulations prescribed by the Secretary or his delegate.
(c) REGISTERED AND CERTIFIED MAILING.—
(1) REGISTERED MAIL.—For purposes of this section, if any * * * other document * * * is sent by United States registered mail—
(A) such registration shall be prima facie evidence that the * * * other document was delivered to the agency * * * to which addressed, and
(B) the date of registration shall be deemed the postmark date.

petition will not be considered timely filed unless it was timely delivered to the Tax Court. As related to a petition filed in the Tax Court, subsection (a)(1) provides that if the petition is delivered to the Tax Court by United States mail in an envelope properly addressed, postage prepaid, "the date of the United States postmark stamped on the cover" in which such petition is mailed "shall be deemed to be the date of delivery" of the petition to the Court, and hence the filing date; provided "the postmark date" falls within the prescribed period for filing the petition. Paragraph (b) provides that the section shall apply in the case of postmarks not made by the U.S. Post Office only if and to the extent provided by regulations prescribed by the Secretary.

Subsection (c) establishes another exception to the general rule. Paragraph (1) provides that, for purposes of this section, if the petition is sent to the Tax Court by U.S. registered mail, such registration shall be prima facie evidence that the petition was delivered to the Tax Court, and the date of registration shall be deemed the postmark date. Paragraph (2) authorizes the Secretary to provide by regulations the extent to which the provisions of paragraph (1) shall apply to certified mail.

Congress thus provided specific means by which a taxpayer-petitioner can avoid the risk of both delay in the mails and failure of the post office to timely postmark envelopes deposited in mailboxes.

Section 301.7502-1, Proced. & Admin. Regs., pertinent parts of which are reproduced in the footnote,[3] deals with the provisions

---

(2) CERTIFIED MAIL.—The Secretary or his delegate is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.

[3] Sec. 301.7502-1. Timely mailing treated as timely filing.

(a) *General rule.* Section 7502 provides that, if the requirements of such section are met, a document shall be deemed to be filed on the date of the postmark stamped on the cover in which such document was mailed. Thus, if the cover containing such document bears a timely postmark, the document will be considered filed timely although it is received after the last date, or the last day of the period, prescribed for filing such document. * * *

(b) * * *

(c) *Mailing requirements.* (1) Section 7502 is not applicable unless the document is mailed in accordance with the following requirements:

(i) The document must be contained in an envelope or other appropriate wrapper, properly addressed to the agency, officer, or office with which the document is required to be filed.

(ii) The document must be deposited within the prescribed time in the mail in the United States with sufficient postage prepaid. For this purpose, a document is deposited in the mail in the United States when it is deposited with the domestic mail service of the

of section 7502. Paragraph (a) notes that if the requirements of the section are met a document shall be deemed filed on the date of the postmark stamped on the cover in which such document is mailed. Paragraph (c) relates the mailing requirements to make section 7502 applicable. The document must be contained in an envelope or appropriate wrapper properly addressed to the agency with which it is to be filed, and it must be deposited within the prescribed time in the U.S. mail with sufficient postage prepaid. Subparagraph (1)(iii)(a), which pertains most directly to the issue with which we are concerned, see footnote 3 for complete text, provides in substance, that if the postmark on the envelope is made by the U.S. Post Office, such postmark must bear a date on or before the due date for filing. If the postmark does not bear such date, the document will be considered not to be timely filed, *regardless of when the document is deposited in the mail.* Accordingly, the sender who relies on section 7502 assumes the

---

United States Post Office. * * *

(iii) (*a*) If the postmark on the envelope or wrapper is made by the United States Post Office, such postmark must bear a date on or before the last date, or the last day of the period, prescribed for filing the document. If the postmark does not bear a date on or before the last date, or the last day of the period, prescribed for filing the document, the document will be considered not to be filed timely, regardless of when the document is deposited in the mail. Accordingly, the sender who relies upon the applicability of section 7502 assumes the risk that the postmark will bear a date on or before the last date, or the last day of the period, prescribed for filing the document, but see subparagraph (2) of this paragraph with respect to the use of registered mail or certified mail to avoid this risk. If the postmark on the envelope or wrapper is not legible, the person who is required to file the document has the burden of proving the time when the postmark was made. Furthermore, in case the cover containing a document bearing a timely postmark made by the United States Post Office is received after the time when a document postmarked and mailed at such time would ordinarily be received, the sender may be required to prove that it was timely mailed.

(*b*) If the postmark on the envelope or wrapper is made other than by the United States Post Office * * *

(2) If the document is sent by United States registered mail, the date of registration of the document shall be treated as the postmark date. If the document is sent by United States certified mail and the sender's receipt is postmarked by the postal employee to whom such document is presented, the date of the United States postmark on such receipt shall be treated as the postmark date of the document. Accordingly, the risk that the document will not be postmarked on the day that it is deposited in the mail may be overcome by the use of registered mail or certified mail.

(3) * * *

(d) *Delivery.* (1) Section 7502 is not applicable unless the document is delivered by United States mail to the agency, officer, or office with which it is required to be filed. However, if the document is sent by registered mail or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued therefor, and that the envelope or wrapper was properly addressed to such agency, officer, or office shall constitute prima facie evidence that the document was delivered to such agency, officer, or office.

risk that the postmark will bear a timely date, unless registered or certified mail is used. It also provides that if the postmark on the envelope is not legible, the petitioner has the burden of proving the time when the postmark was made.

Subdivision (iii)(b) sets forth the rather detailed requirements for reliance on a postmark made other than by the U.S. mail, such as privately metered mail.

Subparagraph (2) of paragraph (c) sets forth the requirements for reliance on registered and certified mail. With respect to certified mail, it is provided that if the document is sent by U.S. certified mail and the sender's receipt is postmarked by the postal employee to whom the document is presented, the date of the U.S. postmark on such receipt shall be treated as the postmark date of the document. "Accordingly, the risk that the document will not be postmarked on the day that it is deposited in the mail may be overcome by the use of registered or certified mail."

The wording and meaning of section 7502 is explicit and clear, except with regard to certified mail and mail bearing a postmark other than a U.S. Post Office postmark, with respect to which the law specifically authorized the Secretary to implement by regulation. The regulation is also explicit and clear and appears to be a valid interpretation and implementation of the law. Under both the law and the regulation there can be little doubt that the date on the U.S. postmark is the sine qua non for the applicability of section 7502, see *Jacob L. Rappaport,* 55 T.C. 709 (1971), affd. 456 F. 2d 1335 (2d Cir. 1972), and, except in the case of an illegible U.S. postmark, see sec. 301.7502-1(c)(1)(iii)(a), Proced. & Admin. Regs., and a postmark other than one made by the U.S. Post Office, see *P. P. Leventis, Jr.,* 49 T.C. 353 (1968), and *Irving Fishman,* 51 T.C. 869 (1969), the date on which the document (petition) is deposited in the mail is immaterial.

All of the published opinions of this Court and other courts involving the application of section 7502 that we have found stand, either directly or indirectly, for the above proposition.[4]

In *Rich v. Commissioner, supra,* the petition was timely executed and turned over to a prison warden for mailing, but due to the negligence of the prison officials, it was not timely mailed. Recognizing that it was a harsh result, the Fifth Circuit nevertheless affirmed the Tax Court's dismissal for lack of jurisdiction, saying at page 174:

---

[4] But see *Perry Segura & Associates, Inc.,* T.C. Memo. 1975-80.

The language of that section [7502] is clear, explicit, and strictly limited. It applies only if there is a postmark date or a date of registration falling within the prescribed period. * * * The plain and unambiguous meaning of the text of the section cannot be extended by its title or heading: "Timely mailing treated as timely filing. * * *"

It also said, at page 175: "This is a hard case presenting a grossly inequitable situation, but neither the Tax Court nor this Court has any authority to relieve the taxpayer from the clear jurisdictional requirements of the law." The Ninth Circuit reached the same conclusion under similar circumstances in *Bloch v. Commissioner, supra.*

In *Luther A. Madison,* 28 T.C. 1301 (1957), the envelope in which the petition was mailed was properly addressed and stamped and the stamps were canceled with wavy lines, but there was no date in the cancellation and no postmark on the envelope. This Court dismissed the petition as being untimely, saying that section 7502 cannot be and was not intended to be satisfied unless a postmark date had been stamped on the cover, and that the statute did not make the filing date depend on when the cover containing the petition was placed in the mailbox.

In *Nathaniel A. Denman,* 35 T.C. 1140 (1961), the envelope in which the document in question was delivered to the Tax Court several days late bore a smudged but decipherable U.S. postmark that was not within the filing period. It also bore a certified mail sticker. Petitioner produced a sender's certified mail receipt which had a timely date typed on it but had no U.S. postmark or date on it. We dismissed for lack of jurisdiction. After discussing how certified mail can be used, we pointed out that petitioner did not take advantage of section 7502(c)(2) and section 301.7502-1(c)(2), Proced. & Admin. Regs., by having the sender's receipt postmarked, and his statement that he personally mailed the petition on the 90th day made no difference. We were faced with very similar circumstances in *C. Louis Wood,* 41 T.C. 593 (1964), affd. 338 F. 2d 602 (9th Cir. 1964), except that petitioner could not produce the sender's certified mail receipt, claiming that it was lost. We again held that section 7502(c)(2) was not applicable.

*Boccuto v. Commissioner,* 277 F.2d 549 (3d Cir. 1960), involved a petition filed in February of 1959, before the Secretary issued his regulation implementing section 7502(c)(2) relative to certified mail. The petition was received late and the

U.S. postmark on the envelope bore a date which was the 91st day after the notice of deficiency was mailed. However, petitioner produced a sender's certified mail receipt postmarked on the 90th day. Despite this fact, the Court dismissed the petition for lack of jurisdiction because section 7502(c)(2) had not been implemented and the postmark date on the envelope was controlling with regard to the applicability of section 7502.

*Skolski v. Commissioner,* 351 F. 2d 485 (3d Cir. 1965), revg. an order of dismissal entered by this Court, was the first case involving section 7502 in which the date of mailing was found to be material and was taken into consideration in holding that the petition was timely filed. The petition was received by the Tax Court on June 26, 1964, 2 days late, in an envelope which bore a postmark stamp with a date that was illegible to the naked eye. The Post Office Department was asked whether it could determine the postmark date. It concluded from an examination of the envelope that it was mailed from Camden, N.J., on June 2—, but could not determine whether there was a numeral following the 2 and if so, what it was. The Court of Appeals held that the Tax Court erred in not permitting the petitioner to attempt to prove what the illegible date on the postmark actually was, i.e., the date of the postmark. The court noted that—

it is the "date of the United States postmark" which section 7502(a) makes the significant date. * * * Here the postmark admittedly had a date although that date was in part illegible and therefore could not be read from the face of the postmark. Under these circumstances we are satisfied that it was competent for the taxpayers to establish what the date of the postmark actually was by evidence other than that appearing on the face of the postmark itself. * * * [351 F.2d at 487-488.]

The court relied on the language of section 301.7502-1(c)(1)(iii)(a), Proced. & Admin. Regs., for support of its conclusion. In closing, the court stated at page 488:

We are not here dealing with a case in which the postmark bore a clearly legible date which was not the actual date of mailing, compare Boccuto v. Commissioner, 3 Cir. 1960, 277 F. 2d 549, nor with a case in which the cover contained no postmark at all, compare Wood v. Commissioner, 9 Cir. 1964, 338 F. 2d 602. Here the postmark actually has a date which under section 7502(a) is, if it can be determined, to be deemed the date of delivery of the taxpayers' petition to the Tax Court. * * *

Shortly after the Court of Appeals decided *Skolski,* this Court was faced with a case involving quite similar circumstances in

*Alexander Molosh,* 45 T. C. 320 (1965). Relying on *Skolski* and section 301.7502-1(c)(1)(iii)(a), Proced. & Admin. Regs., we held that where an illegible date was postmarked on the envelope, the petitioner may offer evidence aliunde to prove what the postmark date was. If the evidence is sufficient to prove what the postmark date was, that date shall be deemed the date of delivery. We distinguish *Luther A. Madison, supra,* because in that case there was no postmark date ever stamped on the envelope, and affirmed that this Court was correct in stating in *Madison* that "The statute does not make the filing date depend upon when the cover containing the petition was placed in the U.S. mail box."

*Estate of Frank Everest Moffat,* 46 T. C. 499 (1966), was the next case considered by this Court on this issue. There it was acknowledged that the petition was mailed in New York on December 29, 1965, the 90th day, and was received by the Tax Court 2 days late. There was a postmark on the envelope but the date thereof was illegible to the naked eye. The Post Office Department determined the postmark date to be December 30, 1965, and we dismissed for lack of jurisdiction holding that the petition was not timely filed. The legible postmark date being 1 day late permitted no other conclusion. We noted that this conclusion was consistent with our opinion in *Luther A. Madison, supra,* and the Court of Appeals opinion in *Rich v. Commissioner, supra,* and that it was sharply distinguishable from *Skolski v. Commissioner, supra,* and *Alexander Molosh, supra,* both of which involved *illegible* postmark dates.

The most recent published opinion of this Court on the subject is *Jacob L. Rappaport, supra.* The facts in that case were almost identical to those before us now. The petition was mailed by ordinary mail on the 90th day but was received by the Tax Court after the 90-day period expired, and the envelope in which it was delivered bore no postmark. The question decided was whether petitioner should be afforded the opportunity to present evidence as to when the envelope would have been postmarked by the U.S. Post Office. We noted that "If the requirement of a postmark is the sine qua non of timely filing, such evidence would be irrelevant." Making reference to many of the cases cited above, we noted that this Court, and others, had consistently taken the position that the requirement of a postmark is essential to obtaining the benefits of section 7502(a) and that we would

continue to adhere to our position that the risk of postmarking is on the taxpayer. We held that evidence as to when the envelope would have been postmarked in the normal course of the U.S. Post Office Department business was irrelevant and immaterial and therefore inadmissible, so respondent's motion to dismiss for lack of jurisdiction was granted.

In the course of this opinion, it was stated:

> We recognize that there may be some logical inconsistency between the rule applicable where there is no postmark at all and the rationale of the cases which permit a taxpayer, in the situation where there is an illegible postmark, to sustain his burden by submitting evidence of time of mailing to prove when the postmark was made [citing *Skolski, Molosh,* and the regulation]. But the fact remains that, in the latter category of cases, there is a postmark, so that there is at least prima facie compliance with the requirements of section 7502(a).

The opinion in *Rappaport* was Court reviewed with no dissents.

It seems very clear to the writer that under the statute, the regulations, and the case law cited above section 7502 is not applicable unless there is a postmark of some sort, U.S. Post Office or otherwise, on either the cover in which the petition is mailed to the Tax Court, or on the sender's receipt for certified mail, or unless the petition is mailed by registered mail. Absent a postmark, evidence of what the postmark date would have or should have been is irrelevant and immaterial because the "postmark date" is made the sine qua non of timely filing under section 7502 (except in the case of registered mail). The statute is clear and explicit, the regulations, which have been on the books for some time, are clear and explicit, and there are no published opinions which support a contrary conclusion. In my view it is injudicious and most inappropriate for this Court to change its position at this time, absent congressional legislation. To write the requirement of a postmark date out of section 7502 at this time is clear judicial legislation, which is not the province of this Court.

In this case the petition was received and filed by this Court more than 90 days after the notice of deficiency was mailed to petitioner so we must grant respondent's motion to dismiss for lack of jurisdiction unless the petition can be deemed timely delivered under section 7502. The envelope in which the petition was mailed bore no postmark, U.S. or private meter, and was not sent by either registered or certified mail. Consequently, section

7502 is not applicable; the petition was not timely filed and in my opinion, respondent's motion to dismiss must be granted.

Petitioner argues that the postmark date on *the certificate of mailing* which he received when he mailed the petition should be deemed to be the date of delivery of the petition under section 7502, without referring to any particular subsection and without citation of authority. We cannot agree. The *certificate of mailing* is not the same as a sender's receipt for certified mail or a registered mail receipt, which are referred to in section 7502(c).[5] At best the receipt is evidence of when the petition was mailed, which is neither in dispute here nor material to the issue to be decided. *Luther A. Madison, supra; Estate of Frank Everest Moffat, supra.*

The reason for this rather exhaustive dissenting opinion is that the majority seem to think that it is unreasonable and illogical to permit a petitioner to prove by evidence aliunde the postmark date of an illegible postmark stamped on the envelope, but to deny this right to the petitioner when there is no postmark on the envelope in which the petition is received. My review of all the published opinions on the subject was made to show that this distinction is justified, reasonable, and logical. In *Skolski v. Commissioner* and *Alexander Molosh,* both *supra,* on which the majority rely, there was a postmark date on the envelope, but the date could not be determined from the postmark itself. Thus, outside evidence, including evidence of time of mailing, was considered to be relevant to prove the *postmark date,* which, if proven to be timely, would make section 7502(a) applicable. See sec. 301.7502-1(c)(1)(iii)(a), Proced. & Admin. Regs. But where there is no postmark on the envelope, as here, the most the outside evidence could prove would be what the postmark date would have been had a postmark been stamped on the envelope in due course. This would not make section 7502 applicable because

---

[5] Certificates of mailing are described in Postal Service Regs. in 39 CFR Part 165. The certificate of mailing, PS Form 3817, simply states that the postal service received from — (petitioner's counsel in this instance) one piece of ordinary mail addressed to ——— (the U.S. Tax Court in this instance). It contains no identifying number and cannot, on its face, be related to any particular piece of mail. There is no indication on the cover mailed that a certificate of mailing has been issued. On the other hand, with both certified mail and registered mail, which are authorized by sec. 7502, a sticker is placed on the cover that is mailed which bears an identifying number that is matched with the identifying number on the sender's certified mail receipt or the registration receipt so the document mailed can be definitely identified. See *Nathaniel A. Denman,* 35 T. C. 1140 (1961), for a discussion of certified mail.

it would not be "the date of the United States postmark stamped on the cover" as required by section 7502(a).

Whether the requirement of a U.S. postmark date stamped on the cover is reasonable or logical is not for the courts to say. That is within the province of Congress, and Congress has stated its requirements in clear and explicit terms. Those terms have been interpreted by the regulation, and the courts, for many years to mean that a postmark date is required to make the section applicable and the regulation must by now be deemed to have the force and effect of law. *National Lead Co. v. United States,* 252 U.S. 140 (1920). Furthermore, Congress has indicated its ability to make the time of mailing controlling when that is what it intends. Section 7502(e), enacted in 1968 (sec. 106(a) of Pub. L. 90-364), provides that any *deposit* required to be made on or before a prescribed date, which is delivered by the U.S. mail, shall be deemed received by the bank or trust company *on the date the deposit was mailed.* But Congress did not change the wording of section 7502(a) at that time.

While the conclusion I would reach here may seem harsh, as did many of the other decisions cited above, it is required by law and is not inequitable. The petitioner is provided with several methods by which he can avoid the risks of post office negligence; and he also still has the remedy of paying the asserted deficiency and suing for refund in the U. S. District Court or the Court of Claims. Furthermore, I believe it is preferable to determine jurisdiction by precise, objective standards rather than by imprecise standards under which emotions may play a part in weighing the evidence.

RAUM, SCOTT, STERRETT, and WILES, *JJ.,* agree with this dissent.