EVE C. WATSON WALLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wallin v. Comm'r
Docket No. 25693-81.
United States Tax Court
T.C. Memo 1983-52; 1983 Tax Ct. Memo LEXIS 730; 45 T.C.M. (CCH) 594; T.C.M. (RIA) 83052; January 31, 1983. Jean S. Schanen, for the petitioner. Henry T. Schafer, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: This matter is before the Court on cross motions by the parties to dismiss for lack of jurisdiction. Petitioner's motion is based upon the alleged failure of respondent to send his *730 statutory notice of deficiency with respect to the year 1977 to petitioner at her last known address, as required by section 6212(b)(1). [1] Respondent's cross motion to dismiss is based upon the alleged failure of petitioner to file her petition with this Court within 90 days of the issuance of respondent's statutory notice of deficiency, as required by section 6213 or section 7502. Argument on both motions was held at a trial session of the Court at Seattle, Washington. The record consists of a stipulation of facts, with numerous joint exhibits submitted by the parties, together with a testimony received at the hearing. The stipulation and attached exhibits are incorporated herein by this reference. *731 FINDINGS OF FACT At the time of filing her petition herein, petitioner was a resident of Oak Harbor, Washington. Petitioner's individual income tax return for the calendar year 1977 (the year here in issue) was duly filed with respondent's *732 Service Center at Ogden, Utah, showing her address to be 4850 Bryn Mawr Court, Apartment 1, Anchorage, Alaska, 99504, (hereinafter the "Anchorage address") and showing an execution date of March 23, 1978. Petitioner's name was given as "Eve C. Watson," and her social security number as 411-82-XXXX. Sometime in the month of April, 1978, petitioner moved from the above address to an unknown address. She married Robert F. Wallin on December 28, 1978, and thereupon moved to another unstated address. She moved with her husband to the State of Washington on April 25, 1979, and took up residence at 6414 Alder Glen Drive, Southeast, Olympia, Washington, 98503. On or about June 1, 1981, petitioner and her husband moved again, to 1222 East Polnell Shore Drive, Oak Harbor, Washington, 98277. Petitioner and her husband filed joint Federal income tax returns with the Ogden Service Center for the years 1978 and 1979, both showing the Olympia, Washington, address. The names shown on the 1978 joint return were "Robert F. & Eve W. Wallin," and the names shown on the 1979 joint return were "Robert F. & Eve C. W. Wallin." On both returns, Mr. Wallin's social security number was disclosed on *733 the first box on the face of Form 1040 entitled "your social security number," and petitioner's social security number was disclosed in the lower box on the face of Form 1040 labeled "spouse's social security no." Petitioner gave no other notification to respondent of her marriage to Mr. Wallin, nor of her various changes of address from 4850 Bryn Mawr Court, Anchorage, Alaska. In September, 1980, respondent's District Director's Office in Anchorage, Alaska, commenced an examination of petitioner's 1977 return. On September 17, 1980, respondent addressed a letter to petitioner at the Anchorage address, for the purpose of setting up an appointment to discuss her 1977 return, and requesting that petitioner supply certain information. This letter was returned by the Anchorage Post Office as undeliverable. Respondent then requested the Anchorage Post Office to supply any forwarding address information with respect to petitioner, but the Anchorage Post Office advised respondent on October 22, 1980, that petitioner had left no forwarding address. On November 14, 1980, respondent's agent checked with the Alaska State Motor Vehicle Division for an address, but found no listing for *734 petitioner. Early in December, 1980, respondent's agent in Alaska began the final writeup of petitioner's case as "unagreed," and finished her work on December 29, 1980. In the meantime, she had checked microfilm records, routinely supplied to the District Director's Office in Alaska by the Ogden Service Center. Such microfilm records supplied from the Service Center gave the listing, by last name and social security number, of all taxpayers filing Federal income tax returns from Alaska (District 92, in respondent's parlance). [2] The agent learned from this source that there was no record of petitioner's having filed an income tax return from Alaska for the years 1978 and 1979. The agent also learned that petitioner's return for the year 1976 had been audited by respondent, and that a statutory notice of deficiency for that year had been sent to the Anchorage address. Respondent's statutory notice of deficiency was issued with respect to the year 1977 on March 4, 1981, and was sent to petitioner's Anchorage address, by certified mail. *735 Delivery was attempted, unsuccessfully, on March 5, March 11 and March 21, 1981, and the statutory notice was finally returned to respondent as "unclaimed" on March 30, 1981. Petitioner having failed to file a petition with this Court, or make any contact with respondent, the deficiency in tax and additions to tax, as set forth in the statutory notice, were assessed by respondent on August 3, 1981. [3]
In January, 1981, the collection division of respondent's Anchorage office was assigned the account of petitioner, for the purpose of securing collection of an unpaid assessment of deficiency in tax for the year 1976. [4] Between January, 1981, and August 20, 1981, the collection officer made the following efforts to ascertain petitioner's current whereabouts and address: *736 (a) He sent another tracer to the Anchorage Post Office; (b) a Notice of Levy was sent to a former employer of petitioner (TransAmerica Title Insurance Company, Payroll Dept.) with respect to the 1976 assessment; (c) a request for petitioner's address was sent to another former employer (Alaska Explosives, Ltd.). The responses to the above efforts provided no information as to petitioner's address. (d) Respondent wrote again to petitioner at the Anchorage address, with regard to the unsatisfied 1976 assessment. The letter was returned by the Post Office as "attempted - not known." On August 18, 1981, respondent's collection officer initiated three more steps: (e) He requested respondent's Ogden Service Center to make a search of its files for returns filed under the name of Eve C. Watson, social security number 411-82-XXXX, for the calendar years 1977, 1978, 1979 and 1980; (f) he also queried the Social Security Administration in Baltimore, Maryland, to obtain the name and address of petitioner's most recent employers; (g) he also sent a further request to TransAmerica Title Insurance Company, at its office in Bellevue, Washington, requesting information as to *737 petitioner's whereabouts and address.
The Ogden Service Center responded to the request from Anchorage on August 20, 1981, showing that petitioner had filed a return for 1977, but that there was no record of returns from petitioner for 1978, 1979 or 1980. This response was based on the standard search procedure employed by the Ogden Service Center, which was to search by name and social security number (primarily the latter). In searching under the social security number, only the "primary" number was used (i.e., the first social security number appearing on a return). No search for the "secondary" number (i.e., the second number on a joint return shown as "spouse's social security no.") was undertaken unless a special request was made, based on an indication of a joint return having been filed. No such special request was made in this case. The Social Security Administration responded to the request from respondent by listing two employers for petitioner, one of whom was TransAmerica Title Insurance Company, in Bellevue, Washington, whom respondent's collection officer had previously queried. On August 26, 1981, respondent's collection officer received a response to his *738 inquiry of August 18 from TransAmerica Title Insurance Company, informing respondent for the first time that petitioner had married Robert F. Wallin, and that her address was 6414 Alder Glen Drive, Southeast, Olympia, Washington, 98503. This was the first date when respondent knew that (a) petitioner was using the name Wallin, instead of Watson, and (b) that petitioner had moved from Alaska to the State of Washington. Respondent's collection officer immediately sent a postal tracer to the Post Office at Olympia, Washington, with regard to this address, and was informed by the Post Office that petitioner had listed a forwarding address of 1222 East Polnell Shore Drive, Oak Harbor, Washington, 98277, with the Olympia Post Office on August 10, 1981. Said notification from the Olympia Post Office was received by respondent in Anchorage on September 9, 1981. On September 11, 1981, respondent's collection officer was also assigned petitioner's account for the year 1977 for collection, and sent a certified letter to petitioner, notifying her of the outstanding assessments and accumulated interest for the years 1976 and 1977. Contact with petitioner was thus established for the first *739 time since respondent's first attempt on September 17, 1980. Petitioner's petition herein for the year 1977 was mailed to the Court, with a private postage meter mark of October 7, 1981, and was received and filed by the Court on October 13, 1981. OPINION The parties each have moved the Court to dismiss this case for lack of jurisdiction, but on different grounds. Respondent moves to dismiss for petitioner's failure to file a petition with this Court within the 90-day period mandated by section 6213(a). Petitioner, on the other hand, moves to dismiss for the alleged failure of respondent to send his statutory notice of deficiency to her for the year 1977 at her "last known address," as required by section 6212(b)(1). Both requirements are jurisdictional in this Court, and we can and must resolve them. Shelton v. Commissioner,63 T.C. 193 (1974). We will consider petitioner's motion first. Section 6212(b)(1) provides that a notice of deficiency will be sufficient if it is mailed to the taxpayer's "last known address." Although that term is not otherwise defined in the Code, we stated, in Looper v. Commissioner,73 T.C. 690, 696-697 (1980): *740 A taxpayer's "last known address" is that address to which, in light of all the facts and circumstances, the respondent reasonably believed the taxpayer wished the notice to be sent. Delman v. Commissioner,384 F.2d 929, 932 (3d Cir. 1967); Lifter v. Commissioner,59 T.C. 818, 821 (1973). Taxpayers are required to send a clear and concise notification directing respondent to use a different address to be assured of effecting a change in the "last known address." Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367, 374-375 (1974), and cases collected therein. If the notice is properly mailed to the "last known address," respondent has done all the law requires; it is then irrelevant that petitioner did not receive the notice in time to file a petition in this Court within the 90-day (or 150-day) period prescribed by section 6213. Section 6212(b)(1); Delman v. Commissioner,supra at 933; Lifter v. Commissioner,supra at 823. We further said, in Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367, 374 (1974), affd. 538 F.2d 334 (9th Cir. 1976), that the *741 "last known address" was * * * the taxpayer's last permanent address or legal residence known by the Commissioner or the last known temporary address of a definite duration to which the taxpayer has directed the Commissioner to send all communications * * *. The relevant inquiry pertains to the Commissioner's knowledge rather than to what may in fact be the taxpayer's most current address in use. Administrative realities demand that the burden fall upon the taxpayer to keep the Commissioner informed as to his proper address * * *. And while the Commissioner is bound to exercise reasonable diligence in ascertaining the taxpayer's correct address * * *, he is entitled to treat the address appearing on a taxpayer's return as the last known in the absence of clear and concise notification from the taxpayer directing the Commissioner to use a different address * * *. "The last known address thus becomes a matter of proof in each case in which the question arises." Maxfield v. Commissioner,153 F.2d 325, 326 (C.A. 9). See also Weinroth v. Commissioner,74 T.C. 430, 435 (1980). We and other courts have also stated that the mere filing of a return *742 for a subsequent year, and prior to the issuance of a statutory notice, showing a different address, is not by itself sufficient to constitute notice to respondent of a change of address for purposes of section 6212(b)(1), and that respondent is therefore entitled to rely on the address shown by the return for the year under audit. Luhring v. Glotzbach,304 F.2d 556, 559 (4th Cir. 1962); Budlong v. Commissioner,58 T.C. 850, 852-3 (1972). In the Ninth Circuit, however, petitioner urges that a more liberal rule has evolved, to the effect that a return subsequently filed with the same service center which received the return under audit, which later return shows a new address, will constitute adequate notice to the respondent of a new address for purposes of section 6212(b)(1). In this connection, petitioner points to the cases of Welch v. Schweitzer,106 F.2d 885 (9th Cir. 1939); Cohen v. United States,297 F.2d 760, 773 (9th Cir. 1962); and Georgia Pacific Corporation v. Lazy Two T Ranch,     F. Supp.    , 76-2 USTC par. 9666, 38 AFTR 2d 76-5081 (N.D. Cal. 1976) and 77-1 USTC par. 9430, 38 AFTR 2d 76-5260 (N.D. Cal. 1976). *743 [5] Petitioner also relies on McPartlin v. Commissioner,653 F.2d 1185 (7th Cir. 1981); Spencer v. Bergheim,     F. Supp.    , 82-1 USTC par. 9102 (N.D. Ill. 1981), Crum v. Commissioner,635 F.2d 895 (D.C. Cir. 1980), and Estate of Ruff v. Commissioner,T.C. Memo. 1982-152, in support of her position. The various cases in this area are not easy to reconcile. It does appear, however, that a rule of decision somewhat along the lines urged by petitioner has evolved in cases in the Ninth Circuit, to the effect that a subsequent year's return, filed with the same service center as the prior year's return, and showing a different address, can be sufficient to put the local district director (who is conducting the audit of the earlier year) on notice of a new address, at least where respondent's auditor knows that communications to the address shown on the return are being returned as undeliverable. See Cool Fuel, Inc. v. Connett,685 F.2d 309, *744 (9th Cir. 1982). However, even assuming, arguendo, that such a rule does exist in the Ninth Circuit, which (although at variance with our prior holdings, both with respect to the efficacy of a new address on a later year's return, without more, constituting adequate notice to respondent, see Lifter v. Commissioner,59 T.C. 818, 822 (1973), as well as with respect to the knowledge which is to be attributed from a service center to a local district director, see Budlong v. Commissioner,supra) we would be bound to follow as being the law with respect to cases arising in that circuit, Golsen v. Commissioner,445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we nevertheless are satisfied that the facts of the instant case place it outside the boundaries of that allegedly more liberal rule. The facts of the instant case show that petitioner, who was then single, filed her 1977 individual income tax return with respondent's Service Center in Ogden, Utah, under the name of Watson, and showing an Anchorage, Alaska, address. Shortly after filing this return, she departed that address. She admits that *745 she gave respondent no direct notification of this move. [6] At the close of the year 1978, she married Robert F. Wallin and then moved with him from Alaska to the State of Washington. She and her new husband then filed joint income tax returns for the years 1978 and 1979, showing on Olympia, Washington, address. The surname shown on said returns, however, was not "Watson" but "Wallin." Petitioner did not notify respondent of her marriage or change of name. The only means of correlating the 1978 and 1979 joint returns with the prior individual return for 1977 was petitioner's social security number, which appeared on the 1978 and 1979 returns in the box on the face of Form 1040 labeled "spouse's social security no." In 1981 petitioner and her husband moved to still another address, in Oak Harbor, Washington. When respondent undertook the audit of petitioner's 1977 return, he attempted to contact petitioner at the Anchorage, Alaska, address. Communications to that address having been returned as undeliverable, respondent's *746 agent first checked with the Anchorage Post Office and then with the Alaska State Motor Vehicles Bureau, in an attempt to learn of a new address, without success. More significantly, the agent also checked microfilm records available in the District Director's office in Alaska, showing returns filed by Alaska taxpayers with the Ogden Service Center for the years 1978 and 1979. This effort also produced no result, since at that point petitioner was filing returns under another name and from another state. Lacking information as to any other address for petitioner, the statutory notice of deficiency herein was issued to the Anchorage, Alaska, address, but, after three attempts, was returned as undelivered. After the necessary waiting period of 90 days, within which petitioner could have filed a petition with this Court, the 1977 deficiency and additions to tax were assessed, and the matter was ultimately turned over to the collection arm of the District Director's office in Alaska. The collection officer (who also had the year 1976 previously assigned to him for collection) had already taken a number of steps to try to ascertain petitioner's whereabouts. The most significant *747 step was his request to respondent's service center to make a search of its files for any returns filed by petitioner under her social security number and name of Watson for the years 1978, 1979 and 1980. Since respondent had no indication that petitioner was married or was filing joint returns, the search at the service center was conducted under the name of Watson and petitioner's social security number of 411-82-XXXX as the "primary" (i.e., first social security number) on any return. Respondent's agent did not request a special search under the "secondary" (i.e. spouse's social security number), having no indication that petitioner was married or that joint returns had perhaps been filed. In fact, respondent was able to learn petitioner's new name and whereabouts only by first ascertaining from the Social Security Administration in Baltimore, Maryland, who petitioner's recent employers were, and then learning from one such employer petitioner's new name and address (which by that time had changed again). We have recapitulated the facts in some detail here, including the efforts made by respondent to locate petitioner after the issuance of the statutory notice of deficiency, *748 not to imply that respondent was under any obligation to conduct such a wide-ranging search as part of his audit process, but simply to demonstrate the extraordinary lengths to which respondent had to go in order to locate petitioner at all. Under the present facts, we hold that petitioner gave no fair and reasonable notice to respondent of her marriage, her change of name or her change of address, and her filing of returns for later years under another name and from another state was not sufficient to put respondent on notice, even though such returns were filed with the same service center. [7] To require respondent to make an additional search of his records for returns of later years under a "secondary" social security number, absent any indication of petitioner's marriage or joint filing under another name, would impose an administrative burden on respondent which goes beyond reasonable diligence and would be excessive. Cf. Alta Sierra Vista, Inc. v. Commissioner,supra.
*749 We therefore think that the facts of the instant case make it clearly distinguishable from the cases cited and relied on by petitioner, so that even under the more liberal rule allegedly espoused by the Ninth Circuit, respondent was entitled to rely on the Anchorage, Alaska, address shown by petitioner in the last return which she filed under the name of Watson as constituting her last known address for purposes of section 6212(b)(1). Alta Sierra Vista, Inc. v. Commissioner,supra;Gray v. Commissioner,73 T.C. 639 (1980); Budlong v. Commissioner,supra. The notice of deficiency for the year 1977 sent to petitioner at her Anchorage address, was, therefore sent to the address last known to respondent, and was valid, even though it was not received. Cataldo v. Commissioner,60 T.C. 522 (1973), affd. 499 F.2d 550 (2d Cir. 1974); Looper v. Commissioner,supra;Bailey v. Commissioner,T.C. Memo. 1982-274. [8] We therefore conclude that respondent's statutory notice was proper, and petitioner's motion to dismiss must be denied. *750 We turn now to respondent's motion to dismiss. Section 6213(a) requires, with one exception not relevant here, that a taxpayer file a petition for redetermination with this Court within 90 days after the mailing of the notice of deficiency. This requirement is jurisdictional. Price v. Commissioner,76 T.C. 389 (1981); Shipley v. Commissioner,572 F.2d 212 (9th Cir. 1977), affirming a Memorandum Opinion of this Court; Estate of Moffat v. Commissioner,46 T.C. 499 (1966). An untimely petition precludes this Court from exercising jurisdiction over the matter. Denman v. Commissioner,35 T.C. 1140 (1961). The statutory notice was issued to petitioner on March 4, 1981, but the petition herein was not received and filed by the Court until October 13, 1981, over seven months later. It was therefore clearly untimely under the specific provisions of section 6213(a). Respondent's motion to dismiss for lack of jurisdiction will therefore be granted. An appropriate order of dismissal for lack of jurisdiction will be entered.
Footnotes
1. All references to Code sections herein are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all references to rules are to the Rules of Practice and Procedure of the Tax Court, except as otherwise noted.↩
2. Microfilm records of returns filed with a service center from other "districts" were also obtainable, but only by special request.↩
3. The parties' stipulation of facts gives this date as August 3, 1980.↩ Since the statutory notice for 1977 was not issued until March 4, 1981, this is an obvious typographical error.
4. Respondent had attempted to contact petitioner at the same Anchorage address for the purpose of conducting an audit of the year 1976, but was unable to make contact with petitioner, and the statutory notice for 1976, subsequently issued to the same Anchorage address, was also returned to respondent by the Post Office as undeliverable.↩
5. These opinions of the Court, however, were vacated in     F. Supp.    , 78-1 USTC par. 9172, 40 AFTR 2d 77↩-6013 (N.D. Cal. 1977).
6. Petitioner claims that she notified the Anchorage Post Office of her change of address, but the records of the Anchorage Post Office do not bear this out.↩
7. Petitioner testified that she and her husband secured extensions of time for filing their 1978 and 1979 returns, received refunds for those years, and received their "tax forms" for 1980 and 1981 from respondent, all at the Olympia, Washington, address. She did not↩ testify that this correspondence was carried on in other than their joint name of Wallin, nor were the relevant documents offered in evidence.
8. Petitioner makes much of the fact that respondent continued to send communications, including the statutory notice, to petitioner at the Anchorage, Alaska, address, even though respondent was aware that such communications were being returned as undeliverable. The short answer is that this was the only address respondent had.↩