GRETCHEN HESS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HENRY BARTENBACH AND FREDDA BARTENBACH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hess v. Commissioner
Docket Nos. 22332-85, 22334-85
United States Tax Court
T.C. Memo 1989-412; 1989 Tax Ct. Memo LEXIS 410; 57 T.C.M. (CCH) 1224; T.C.M. (RIA) 89412; August 10, 1989
*410 Ps' claim they mailed the petitions to the Tax Court by certified mail return receipt requested. Having lost the originals, they produced copies of timely U.S. postmarked Receipts For Certified Mail (U.S. Postal Service Forms 3800). The envelopes in which the petitions were received by the Court bear insufficient postage for certified mail and they bear untimely U.S. postmarks. Ps did not produce either the originals or copies of the Domestic Return Receipts (U.S. Postal Service Forms 3811). No certified mail sticker or Domestic Return Receipt has ever been affixed to either envelope. The copies of the U.S. Postal Service Forms 3800, which were received in evidence, do not correspond to the envelopes containing the petitions which were mailed to this Court. Held, Ps' failed to prove they mailed the petitions by certified mail and, therefore, they may not rely on sec. 7502(c)(2), I.R.C. 1954, or sec. 301.7502-1(c)(2), Proced. & Admin. Regs. R's Motions to Dismiss For Lack of Jurisdiction are granted. Richard A. Dienst, for the petitioners. [1] *411 Judy Jacobs, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: These cases were assigned to Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7443A(b)(4) and Rule 180 et seq., Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: These cases are before the Court on respondent's Motions to Dismiss for Lack of Jurisdiction. Respondent seeks dismissal on the ground that the petitions were not filed within the time prescribed by section 6213(a) or 7502. Petitioners, in opposing respondent's contentions, maintain that the petitions were timely mailed by certified mail and, thus, timely filed within the intendment of sections 7502(a) and 7502(c) and the regulations *412 promulgated thereunder. The issue, therefore, is whether the petitions were timely filed. The answer depends on whether these petitions were, in fact, mailed by certified mail on June 21, 1985. The parties agree that respondent mailed the notices of deficiency on March 27, 1985 by certified mail (nos. 179985, 179986, 179987 and 179988) to petitioners at their last known and correct addresses pursuant to section 6212. Petitioners resided in Grand Island, Nebraska on the date they filed their petitions. The last day that petitions based on the notices mailed to petitioners could be timely filed with this Court was Tuesday, June 25, 1985, which date was not a legal holiday in the District of Columbia. The petitions were received and filed on July 2, 1985. The envelopes containing the petitions, which were properly addressed, bear clearly legible United States postmarks of "PM Jun. 29, 1985, New York, NY. 100." June 29, 1985 was a Saturday. The "100" appearing in each postmark signifies the Morgan General Mail Facility (Morgan Mail Facility). In support of their position and having proven at the second hearing that they lost the originals thereof, petitioners submitted copies of *413 two Receipts For Certified Mail, P.S. Form 3800 (hereinafter referred to as Form or Forms 3800). See Ex. 5 and Rule 1004, Federal Rules of Evidence. One Form 3800 has thereon certified no. P 089 819 297 and the other certified no. P 089 819 298. Each Form 3800 bears a United States postmark which shows thereon "Jun. 21, 1985, 102 Church St. Sta., New York, N.Y." June 21, 1985 was a Friday. Petitioners also presented the testimony of three witnesses and introduced other documents which were received in evidence. The other two witnesses were Adrian Holmes Wright (Ms. Wright), who was Ms. Pfahl's secretary from March of 1985 until June 21, 1985 and John M. Nolan (Mr. Nolan), the General Manager Postmaster of the New York City Division of the United States Postal Service, who was responsible for several postal facilities, including the Church Street Station and the Morgan Mail Facility. Ms. Wright left Ms. Pfahl's employ after the close of business on June 21, 1985 for personal family reasons. Section 6213(a) requires, with one exception not applicable here, that a taxpayer file a petition for redetermination with this Court within 90 days after the notice of deficiency authorized *414 in section 6212 is mailed. This requirement is jurisdictional. Failure to file within the required period requires that a petition be dismissed for lack of jurisdiction. Boccuto v. Commissioner , 277 F.2d 549, 552 (3d Cir. 1960); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Shipley v. Commissioner, 572 F.2d 212, 213 (9th Cir. 1977), affg. T.C. Memo. 1976-383; Denman v. Commissioner, 35 T.C. 1140, 1144 (1961); Sylvan v. Commissioner, 65 T.C. 548, 549-550 (1975); and Storelli v. Commissioner, 86 T.C. 443, 446-447 (1986), and cases there cited. It is clear that petitioners have not met the foregoing requirement. However, the time of mailing will be deemed the time of filing if the statutory requirements of section 7502 are met. Since the petitions were actually received and filed on July 2, 1985, 97 days after the mailing of the notices of deficiency, petitioners must rely on section 7502 to establish the timeliness of their petitions. Section 7502(a) provides, in part, that if a properly addressed, postage prepaid envelope or wrapper containing the petition is deposited in the mail in the United States and bears a United States postmark date *415 which is on or before the last day for filing, the postmark date will be deemed the filing date. It is clear that the United States postmark date on each of the envelopes in which the petitions were received (i.e., June 29, 1985) is beyond the 90-day filing period permitted by section 6213(a). Generally, where a legible United States postmark date appears on the envelope or wrapper, as it does here, no extrinsic evidence may be introduced to prove the time that the postmark date was made. Shipley v. Commissioner, supra at 214; Sylvan v. Commissioner, supra at 551; Estate of Moffat v. Commissioner, 46 T.C. 499, 501-502 (1966). However, where the envelope or wrapper is mailed by United States registered mail, the date of registration shall be deemed the postmark date. Sec. 7502(c)(1)(B). If the document is sent by certified mail the postmark date on the mailer's receipt shall be treated as the postmark date of the envelope. Sec. 7502(c)(2); sec. 301.7502-1(c)(2), Proced. & Admin. Regs. The Domestic Mail Manual (DMM) contains the regulations of the United States Postal Service governing its domestic mail services. DMM, Issue 15, sec. 111.1 (July 12, 1984). [3] Respecting "Mailer Responsibility," *416 it provides at the very outset the following: Notwithstanding any statement contained in this manual or the statements of any employee of the United States Postal Service, the burden rests with the mailer to ensure that he has complied with the prescribed laws and regulations governing domestic mail. [DMM, sec. 111.3] Certified mail service provides the mailer with a mailing receipt and a record of delivery at the office of address. No record is kept at the office to which certified mail is mailed. Certified mail is dispatched and handled in transit as ordinary mail. DMM, sec. 912.1. Delivery records are kept for 2 years at the end of which *417 period they are destroyed. DMM, sec. 912.54. Only mailable matter on which postage at the First-Class rate has been paid is accepted as certified mail. It may be mailed at a post office, branch, or station. DMM, secs. 912.2 and 912.43. Fees and postage may be paid by ordinary postage stamps. DMM, sec. 912.41. The fees for certified mail in June 1985 were: Fee in addition to postage
$ .75
* * * Return receipts Requested at the time of mailing: Showing to whom and date delivered
.70
DMM, sec. 912.3 Form 3800 is the mailer's receipt for certified mail and it may be obtained from the post office for no charge. DMM, sec. 912.44. It is issued with a gummed sticker that can be separated from the receipt portion thereof. It is the mailer's responsibility to enter on the receipt portion the name and complete address of the person or firm to whom the mail is addressed and to attach to the envelope sufficient postage stamps to pay for the certified mail fee, First-Class postage and return receipt fee. DMM, secs. 912.44a. and c. If a receipt is desired, it is the mailer's responsibility to detach the gummed sticker and attach it to the address side of the envelope and present the envelope *418 to the postal employee. DMM, sec. 912.44d. [4] The gummed sticker bears the same certified mail number that appears at the top of the Form 3800 and travels with the envelope to its destination. When a receipt is requested, the postal employee will compare the name and address of the addressee on the envelope and on the Form 3800, make certain that proper postal charges have been paid by stamps affixed, postmark the receipt and return it to the mailer. The envelope will then be placed directly in the mail. It will not be returned to the mailer. DMM, sec. 912.71. The Form 3800 on its reverse side contains specific instructions for the mailer to follow if a mailer wants the receipt postmarked. *419 A Domestic Return Receipt, P.S. Form 3811 (hereinafter referred to as Form or Forms 3811), furnishes a mailer with evidence of delivery and it likewise may be obtained at the post office for no charge. DMM, sec. 932.11. It has gummed tabs at each end with perforations. If a return receipt is desired, it is the mailer's responsibility to check the appropriate block on the Form 3800 to show the fee and endorse the envelope on the address side near the certified mail sticker bearing the certified mail number "Return Receipt Requested." The mailer must enter the certified mail number on the Form 3811, address it to himself and attach it to the envelope. DMM, sec. 912.44b. The Form 3811 "rides with the mail piece," and in fact, becomes a postcard that is returned to the mailer. When the postcard is removed from the envelope for return to the mailer, the gummed tabs normally remain on the envelope. Explicit instructions appear on the Form 3811 advising the mailer what to do. The minimum amount of postage required to mail each of these petitions by certified mail return receipt requested was $ 1.77 ($ .22 for First Class postage, $ .10 for large envelopes, $ .75 for the certified fee, *420 and $ .70 for return receipt requested). Morgan Mail Facility is New York City's main mail processing plant. It is open and processing mail 365 days a year, 24 hours a day. In June of 1985, the Church Street Station was open for business Monday through Friday and until 12 noon on Saturday. Mail deposited Monday through Friday was taken upstairs and cancelled. Mail deposited on Saturday was taken to the Morgan Mail Facility for cancelling. Ms. Pfahl was admitted to practice before this Court in 1979. In the 2 or 3 years before she went into practice for herself in November of 1984, she either filed or supervised the filing of some 200 petitions with this Court. She was familiar with mailing documents by certified mail return receipt requested and knowledgeable of the law respecting the time for filing petitions with this Court. [5] *422 These petitions were of particular importance to her because petitioners are related to her. On June 21, 1985, she maintained an office for the practice of law at 305 Broadway in New York City, which was 4-1/2 to 5 blocks from the Church Street Station. The Morgan Mail Facility was 1 to 1-1/2 miles from Ms. Pfahl's office. According to Ms. Pfahl, the *421 following events took place on that date: she instructed Ms. Wright to finalize the petitions, to prepare mailing labels for the envelopes and to prepare the Forms 3800 and 3811. Blank Forms 3800 and 3811 had been obtained from the Post Office and were kept in stacks in Ms. Wright's desk. Ms. Pfahl signed each petition and notarized Ms. Wright's signature on a certificate of service attached thereto. She did not see Ms. Wright affix any stamps, certified mail sticker or a Form 3811 to either envelope. She directed Ms. Wright to take the materials to the Church Street Station where she was to get the Forms 3800 postmarked by the Post Office. Upon Ms. Wright's return, Ms. Pfahl inspected the original Forms 3800 to see that they were stamped. It was Ms. Pfahl's practice to inspect all original Forms 3800 whenever certified mail was involved. Consistent with the foregoing, Ms. Wright's version of the events were as follows. Under Ms. Pfahl's supervision and at her direction, Ms. Wright, on June 21, 1985, finalized the petitions and typed the addresses on the envelopes as well as on the Forms 3800 and 3811. She signed the certificate of service attached to each petition and observed Ms. Pfahl sign as a notary. Ms. Wright did not attach a certified mail sticker or a Form 3811 to either envelope. She took the envelopes containing the petitions, money, stamps and Forms 3800 and 3811 to the Church Street Station and handed them to the postal clerk (who was not called as a witness nor was there any showing that any attempt had been made to contact him). She took stamps and money with her so that she would know how many stamps she had to put on the envelopes and in case additional money was necessary for postage. The postal clerk postmarked the Forms 3800 in her presence. She did not see the postal clerk attach a certified mail *423 sticker to either envelope nor did she witness him attaching a Form 3811 to either envelope. She returned to the office with the Forms 3800 which she showed to Ms. Pfahl. The gummed stickers had been removed from the Forms 3800, the copies of which were received in evidence. However, no gummed stickers have ever been affixed to either of the envelopes which contained the petitions filed with this Court. No Forms 3811 were ever affixed to either of the envelopes nor did either envelope bear the endorsement "Return Receipt Requested." No Forms 3811 were ever returned to Ms. Pfahl's office. Each envelope bears only a $ 1.00 postage stamp, whereas the Forms 3800 received in evidence show postage and fees in the amounts of $ 1.84 and $ 2.18, respectively. [6] *424 Ms. Pfahl could not explain the discrepancy in the amounts of postage for the two mailings nor could she relate either certified mail receipt to the envelope to which it was supposed to correspond. Neither could Ms. Wright explain the discrepancy in the amounts of postage for the two mailings nor could she relate either of the Forms 3800 to the envelope which contained the petition in the Hess case. It was orally stipulated that if Mr. F.J. Campbell (Mr. Campbell), Superintendant of the Registry Section of the Washington, D.C. Post Office, were to testify his testimony would be as follows: that the system is not infallible, that even though he has no record of certified mail being delivered to this Court, in this particular case [sic], that the records are sometimes inaccurate and mail, which is delivered certified mail, sometimes is not recorded in his office, and he has no knowledge one way or another as to whether in the Hess and Bartenbach case [sic], the certified certificates were delivered to this Court. [7] [] For many years the Court has had a policy of keeping a record of all certified mailings which it receives. A thorough search of the Court's records from June 24, 1985 to July 2, 1985, inclusive, disclosed that it received no certified mailings numbered P 089 819 297 or P 089 *425 819 298. The copies of the Forms 3800 received in evidence do not correspond to the envelopes containing the petitions which were mailed to this Court. The petitions were not mailed to this Court by certified mail on June 21, 1985. The factual situation we herein consider is one of first impression. The receipt portions of the Forms 3800 bear timely U.S. postmarks yet the envelopes in which the petitions were received bear untimely U.S. postmarks. No certified mail sticker or Form 3811 has ever been affixed to either envelope. Neither envelope bears an endorsement "Return Receipt Requested" and both bear insufficient postage to be mailed certified mail return receipt requested. Section 7502(c) reads in salient part: (1) Registered mail. -- For purposes of this section, if any such return, claim, statement, or other document * * * is sent by United States registered mail -- (A) such registration shall be prima facie evidence that the return, claim, statement, or other document [envelope] was delivered to the agency, officer, or office to which addressed, and (B) the date of registration shall be deemed the postmark date. (2) Certified mail. -- The Secretary is authorized to provide *426 by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail. [Sec. 7502(c) applies to documents filed in the Tax Court. Sec. 7502(d)(1) and sec. 301.7502-1(b)(1)(ii), Proced. & Admin. Regs.] Pursuant to the foregoing authority, the Secretary promulgated section 301.7502-1(c), Proced. & Admin. Regs., concerning mailing requirements, which states in pertinent part: (2) * * * If the document [envelope] is sent by United States certified mail and the sender's receipt is postmarked by the postal employee to whom such document is presented, the date of the United States postmark on such receipt shall be treated as the postmark date of the document. Accordingly, the risk that the document [envelope] will not be postmarked on the day that it is deposited in the mail may be overcome by the use of * * * certified mail. [Emphasis supplied.] Generally, we prefer to hold that this Court has jurisdiction whenever possible, so as to provide taxpayers with an opportunity to obtain judicial redetermination of their tax liability prior to the payment thereof. Fishman v. Commissioner, 51 T.C. 869, 874 (1969), *427 affd. per curiam 420 F.2d 491 (2d Cir. 1970). See Brown v. Commissioner, T.C. Memo. 1982-165. Section 7502(c) is intended as a relief measure, to enable prospective petitioners to avoid "the risk that the postmark will bear a date on or before the last date, or the last day of the period, prescribed for filing the document." Secs. 301.7502l(c)(1)(iii)(a) and 301.7502-1(c)(2), Proced. & Admin. Regs. See Krellman v. Commissioner, T.C. Memo. 1979-367. However, in order to obtain the benefit of that relief, prospective petitioners must prove that they have fully complied with the mandates of the statute and regulations. Section 301.7502-1(c)(2), Proced. & Admin. Regs., heretofore quoted, requires showing both: 1) that the document is sent by United States certified mail, and 2) that the sender's receipt (Form 3800) is postmarked by the postal employee to whom such envelope is presented. Storelli v. Commissioner, 86 T.C. at 446. See and compare, Emmons v. Commissioner, 92 T.C. 342, 346 (1989). While petitioners have submitted copies of timely postmarked Forms 3800, they have wholly failed to show that these petitions were mailed to this Court by certified mail on June 21, 1985 or any *428 other date. In essence, sections 7502(c) and 301.7502-1(c), Proced. & Admin. Regs., require proof of a link between the sender's receipt and the envelope to which it relates. This link may be shown by the correspondence of the numbers on the receipt to those on the envelope. A Form 3800 consists of a receipt portion and a sticker portion, each containing the identical certified mail number. Where a postmarked sender's receipt is desired, the sender must affix the sticker portion to the address side of the envelope and present the envelope, properly addressed and with sufficient postage, together with the filled-in sender's receipt portion, to the postal employee who stamps the sender's receipt portion with the postmark date, returns it to the sender, and retains the envelope for transmission to the addressee. Thus, where the sticker portion of a Form 3800 is affixed to an envelope and its certified number matches that on the retained receipt portion of the Form 3800, the envelope can be definitely identified and related to the sender's receipt. DMM, secs. 912.4, 912.5, 912.7; Denman v. Commissioner, 35 T.C. at 1143; Sylvan v. Commissioner, 65 T.C. at 551-552 n. 7. Here, the envelopes *429 in which the petitions were received cannot be identified with the copies of the retained receipt portions of the Forms 3800 which are in evidence because the sticker portions thereof were never affixed to the envelopes. Moreover, neither envelope bears sufficient postage for certified mailing. Since the sticker portions thereof were never affixed to the envelopes, the Forms 3800 received in evidence do not show that the envelopes containing the petitions were sent by certified mail. Under the regulations, petitioners must show that the petitions were sent by certified mail. Petitioners' witness testified that she did not affix the sticker portions of the Forms 3800 to the envelopes and did not see the postal clerk affix the sticker portions of the Forms 3800 to the envelopes. Since the sticker portions of the Forms 3800 were not attached to the envelopes containing the petitions, the petitions were not sent by certified mail. Consequently, the postmark dates appearing on the envelopes in which these petitions were received is controlling. Sylvan v. Commissioner, supra at 551-552 n. 7; and Haaland v. Commissioner, T.C. Memo. 1984-335. The scheme of section 7502(c) and its implementing *430 regulations is to avoid testimony as to the date of mailing in favor of documentary evidence which definitively proves the mailing date. The statute and regulations are not concerned with risks independently created by a taxpayer's choice of agents to handle his petition before it is entrusted to post office employees. Redman v. Commissioner, 820 F.2d 209 (6th Cir. 1987); Shipley v. Commissioner, 572 F.2d at 214. The documentary evidence submitted by petitioners does not support a finding that they have complied with the regulations. In fact, the envelopes in which the petitions were delivered to this Court show beyond any question of doubt that the petitions were not mailed to this Court by certified mail. They show that no certified mail sticker from a Form 3800 or a Form 3811 has ever been affixed to either envelope. See Kahle v. Commissioner, 88 T.C. 1063, 1066 n. 10 (1987). Neither envelope bears sufficient postage for certified mailing and both bear a clearly legible U.S. postmark date of June 29, 1985. In this regard, during the second hearing, the Court handed the envelopes to Mr. Nolan for examination. After he examined the envelopes the Court asked him if they had been *431 mailed by certified mail. His response was "there are two reasons they couldn't have been. One is there is no certified label on it and second there isn't enough postage on them to have been certified mail." In addition, neither the Registry Section of the Washington, D.C. Post Office, which was the office of address, nor this Court, both of which keep records of all certified mailings received, had a record of receiving certified mailings numbered P 089 819 297 or P 089 819 298. Thus, on the basis of these records, we conclude that these envelopes were mailed by ordinary mail either from the Church Street Station on Saturday, June 29, 1985, in which event they would have been cancelled at the Morgan Mail Facility, or that they were taken directly to the latter facility on that date and mailed. This Court and others have required strict compliance with the terms of the statute and the regulations by taxpayers who wish to take advantage of the exceptions contained in section 7502. With regard to the two requirements of section 301.7502-1(c)(2), Proced. & Admin. Regs., we have said: unless taxpayers are held to strict proof of compliance with the statute and regulations, the temptation *432 would be great to conveniently misplace the sender's receipt for certified mail and attempt to prove by virtually uncontestable oral testimony of the sender, who would in most cases be prejudiced, that the receipt was postmarked on time. Wood v. Commissioner, 41 T.C. 593, 597 (1964). The lesson in Wood of strict proof of compliance with the statute and regulations is equally applicable here. Storelli v. Commissioner, supra at 449; Drake v. Commissioner, 554 F.2d 736, 738 (5th Cir. 1977). The mandate of the regulations is proof that the document was sent by certified mail. If the envelope containing the document has the sticker portion of a Form 3800 affixed to it and bears sufficient postage for mailing by certified mail, this fact may be proved by the envelope. These facts are not shown here and no other facts are shown to establish that the envelopes containing the petitions were sent by certified mail. The absence of a showing that the petitions were sent by registered or certified mail creates "a conclusive statutory presumption" that the dates on the envelopes are controlling. Estate of Moffat v. Commissioner, 46 T.C. at 502. Respondent's motions will be granted. In closing, *433 we decline Mr. Dienst's oral request made at the second hearing that sanctions be imposed on respondent's counsel and that certain portions of these records be expunged. The complained of matter concerns the cross-examination of Ms. Pfahl and Ms. Wright, as to whether the copies of the Forms 3800, which were critical documentary evidence, were altered. The cross-examination was predicated on a genuine question as to the authenticity of the originals. See Rule 1003, Federal Rules of Evidence (F.R.E.). See and compare Greene v. Commissioner, T.C. Memo. 1984-359; Judge v. Commissioner, T.C. Memo. 1984-527; Huene v. Commissioner, T.C. Memo. 1984-564. Rule 611, F.R.E., provides, inter alia, that the Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of witnesses. The Court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. It is our opinion, that the cross-examination *434 was proper and within the scope of the direct examination. In view of the foregoing, Orders of dismissal for lack of jurisdiction will be entered. APPENDIX A
The relevant portions of the DMM, effective in June 1985, are as follows: Domestic Mail Services 110 General Information 111 Scope 111.1 General. This manual contains the regulations of the United States Postal Service governing its domestic mail services. These regulations include the rates for postage and restrictions on its use, descriptions of the classes of mail and special services and conditions governing their use, requirements for wrapping and mailing, explanations of collection and delivery services, and general provisions concerning the use of postal services and facilities. 111.2 Definition a. Domestic mail is mail transmitted within, among, and between the United States * * *. 111.3 Mailer Responsibility. Notwithstanding any statement contained in this manual or the statements of any employee of the United States Postal Service, the burden rests with the mailer to ensure that he [or she] has complied with the prescribed laws and regulations governing domestic mail. * * * 111.5 Availability and Distribution 111.51 *435 Copies of the Domestic Mail Manual (DMM) are available for inspection upon request at USPS Headquarters, regional offices, and all domestic post offices, stations, and branches during normal business hours. * * * * * * 111.54 Revisions to the DMM will periodically be published in the Federal Register. * * * * * * 912 Certified Mail 912.1 Description. Certified mail service provides the sender with a mailing receipt and a record of delivery at the office of address. No record is kept at the office at which certified mail is mailed. It will be dispatched and handled in transit as ordinary mail. * * * Return receipts * * * may be obtained as set forth in 932 * * * by the payment of additional fees as provided in 932.2 * * *. 912.2 What May Be Certified. Only mailable matter on which postage at the first-class rate has been paid will be accepted as certified mail. * * * 912.3 Fees. The fees for certified mail are: Fee in addition to postage
$ .75 * * * Return receipts Requested at the time of mailing: Showing to whom and date delivered .70
* * * 912.4 Mailing .41 Payment of Fees and Postage. The fee and postage may be paid by ordinary postage stamps, meter stamps, or by permit imprints. *436 * * * .42 Points to Which Mailable. Certified mail may be addressed for delivery only: a. In the United States * * *. .43 Where to Mail. Customers may mail certified mail at the post office, branch, or station * * *. .44 How to Mail. Obtain blank certified mail coupons, Forms 3800, Receipt for Certified Mail, (no charge) at the post office * * *. Also obtain blank return receipt forms [Forms 3811] if needed. Observe the following procedure: a. Enter on the receipt portion of the certified mail coupon [Form 3800] the name and complete address of the person or firm to whom the mail is addressed. b. If a return receipt is desired, check the block on the mailing receipt to show the fee and endorse the article on the address side near the certified mail endorsement Return Receipt Requested or Return Receipt Requested Showing Address Where Delivered. The mailer must enter the certified mail number on the return receipt card, address it to himself, and attach it to the back of small envelopes and on the front of packages and large envelopes if it will not cover the address. The name of the person to whom the return receipt is to be furnished must be the same as that of the sender *437 as shown on the certified article. * * * c. Attach to the envelope sufficient postage stamps to pay for the certified mail fee, First-Class postage, return receipt fee * * * as appropriate. d. If a postmarked sender's receipt is desired, the sender must attach the certified mail sticker to the address side of the article and present the article and the completed coupon [Form 3800] to the postal employee. If asked to do so, the postal employee will show on the receipt the time the article was accepted for mailing. * * * e. If a postmarked receipt is not desired, the sender must attach the certified mail sticker to the address side of the article, detach his receipt, and mail the article. He must mark his receipt to show the date. * * * 912.5 Delivery .51 Procedure. Certified mail for delivery by carriers will be taken out on the first trip after it is received * * *. Certified mail not restricted in delivery will be delivered to the addressee or his authorized representative. * * * * * * .54 Delivery Records The delivery records will be held for 2 years. At the end of that period the records will be destroyed. * * * 912.7 Verified Mailing Receipts .71 Individual Mailings Verify *438 as follows: a. Compare name and address of addressee on the article and on Form 3800, Receipt for Certified Mail. b. If sender has checked blocks on Form 3800 for return receipt * * * make sure the article bears the proper endorsement. c. Examine the return receipt card to determine whether appropriate blocks in instructions to delivering employee have been checked, and that the card is securely attached. Make sure address is properly completed by the sender. d. Make certain that proper postal charges have been paid by stamps affixed * * *. e. Postmark receipt portion and give to mailer. * * * f. Deposit article in mail. Do not return to the mailer. * * * 932 Return Receipts 932.1 Purpose. Return receipts [Forms 3811] furnish the mailer with evidence of delivery. * * * Return receipts may be obtained for mail which is sent COD * * * or which is * * * certified. The return receipt is returned by mail by the Postal Service to the mailer after the article is delivered to the addressee. * * * 932.2 Fees (in Addition to Postage and Other Fees). The fees for return receipts are: Requested at time of mailing: Showing to whom (signature) and date delivered
[$ .]70
* * * 932.3 Procedures *439 at Mailing Office .31 The sender may request a return receipt, Form 3811, at the time of mailing by informing the postal clerk or writing on the mail Return Receipt Requested * * *. Individual mailers will also normally complete the mailer's entries on the form, but in those cases where the article is mailed with the endorsement and the correct postage but without Form 3811 attached, the clerk will complete the form and attach it to the article. * * * .33 In the event a mailer does not, after a reasonable period of time, receive a return receipt he has paid for, he may, within one year of mailing, request a duplicate if he can produce a receipt for such payment. The mailer may request the duplicate by presenting the receipt at any post office, branch or station. The clerk will assist the customer in completing Form 3811-A, postmark it, and mail it to the delivery post office. There is no charge for obtaining such a duplicate. .34 Payment for return receipts shall be noted on the receipt given for purchase of * * * certified mail * * *. 934.4 Procedures at Office of Delivery .41 Return Receipt, Form 3811 a. If a return receipt is requested, the delivering employee (either carrier *440 or window clerk) must obtain either the signature, or the authorized stamp * * * of the individual, company, or organization receiving the * * * certified * * * article. Item 5 [signature-addressee] should be completed if the article is accepted by the addressee. Item 6 [signature-agent] should be completed if it is completed by an agent. * * * The delivering employee will examine the card [Form 3811] for completeness and make any corrections necessary. Return receipts will be given to the clearing clerk daily. b. The clearing clerk must check all return receipts to make sure they are properly signed and dated. * * * Properly completed return receipts must be mailed no later than the first working day after delivery. * * * c. Return receipts addressed to * * * judicial branches of government may be signed for with a stamp showing the name and location of the accepting organization * * *. Footnotes
1. Mr. Dienst is admitted to practice before this Court. Charlotte W. Pfahl, Esq. (hereinafter called Ms. Pfahl), who was called as a witness at the second hearing, is first counsel of record for petitioners. While Mr. Dienst did file an entry of appearance, his appearance is limited to the disposition of the motions we herein decide.
2. Unless otherwise indicated, section references are to sections of the Internal Revenue Code in effect for the year in issue.↩
3. All of the sections of the DMM to which reference is made herein were in full force and effect in June 1985. Our later references to the pertinent sections thereof will refer only to DMM and section number. In the interest of completeness, and for a precise recitation of all of the relevant sections of the DMM, see Appendix A. Copies of the DMM are available for inspection upon request at all domestic post offices, stations and branches during normal business hours, and it is published in the Federal Register. DMM, secs. 111.51 and 111.54.↩
4. The instructions on the back of the retained receipt portion of the Form 3800 clearly provide, in part -- STICK POSTAGE STAMPS TO ARTICLE TO COVER FIRST-CLASS POSTAGE, CERTIFIED MAIL FEE, AND CHARGES FOR ANY SELECTED OPTIONAL SERVICES. (see front) 1. If you want this receipt postmarked, stick the gummed stub on the left portion of the address side of the article [envelope] * * * and present the article at a post office service window * * *. [See Brown v. Commissioner, T.C. Memo. 1982-165↩ n. 2.]
5. On June 21, 1984 she mailed or caused to be mailed a letter to a Mr. Richard Troester concerning an audit of Mr. & Mrs. Bartenbach for the taxable years before the Court. The cover of the envelope containing that letter bears a private postage meter stamp dated June 21, 1984 and shows postage prepaid of $ 1.89. Also on the cover is a gummed certified mail sticker bearing certified no. P 356 686 721 and a stamp "Return Receipt Requested." On the back of the envelope are the gummed tabs which had been attached to a Form 3811. See Ex. E.
6. As previously found, the minimum amount of postage to mail each of these petitions by certified mail return receipt requested was $ 1.77.
7. Mr. Campbell was subpoenaed by petitioners and he was present at the second hearing. However, on the basis of the above-quoted stipulation and by agreement of the parties, he was released.↩